**EXHIBIT A**

ELECTRONICALLY FILED
2025 Mar 14 AM 8:48
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2025-CV-000520
PII COMPLIANT

HUTTON & HUTTON LAW FIRM, L.L.C.
8100 E. 22nd St. N., Bldg. 1200
Wichita, Kansas 67226
Phone: (316) 688-1166 / Fax: (316) 686-1077
E-Mail: Blake.Shuart@huttonlaw.com

IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT

| | |
|---|---|
| ANTIMO, LLC, | ) |
| *Plaintiffs*, | ) ) ) Case No. |
| vs. | ) ) **JURY TRIAL DEMANDED** |
| BRENDAN REICH, | ) ) |
| *Defendant*. | ) |

PURSUANT TO K.S.A. CHAPTER 60

## PETITION

COMES NOW the plaintiff, ANTIMO, LLC, and for its claims against the defendant, BRENDAN REICH, states as follows:

### THE PARTIES, JURISDICTION & VENUE

1. Plaintiff, ANTIMO, LLC (hereinafter "plaintiff" or "Antimo"), is a Kansas Limited Liability Company actively registered to do business in the State of Kansas. Antimo is a global trading company focused on commodity markets in the U.S., Europe & Asia. Plaintiff Antimo's principal office is located at 250 N. Water, Ste. 300, Wichita, Kansas 67202.

2. Defendant, BRENDAN REICH (hereinafter "defendant" or "defendant Reich"), is an adult individual and a resident of New Canaan, Fairfield County, Connecticut. At all times relevant herein, defendant was employed with plaintiff Antimo working through Antimo's home office in Wichita, Sedgwick County, Kansas, remotely from his home in Connecticut as a Senior Trader. Defendant Reich may be served personally or through other lawful means.

1

3. The Court has subject matter jurisdiction over this action.

4. This Court has specific personal jurisdiction over defendant Reich. Defendant Reich engaged in substantial, continuous and systematic contact with the State of Kansas during his employment with Antimo as a Senior Trader which would support jurisdiction consistent with the constitutions of the United States and of the State of Kansas, pursuant to K.S.A. 60-308(b)(2). Defendant Reich's wrongful acts or omissions have caused significant economic losses in this jurisdiction.

5. Venue is proper in the Eighteenth Judicial District, Sedgwick County, Kansas, as the location of Antimo's principal place of business through which defendant Reich worked as an employee at all times relevant herein.

6. The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

**FACTUAL ALLEGATIONS**

Plaintiff hereby adopts by reference paragraphs one through six (1-6) and, in addition, states:

*Background – The Role of RINs in Defendant's Physical Ethanol Business*

7. The defendant, Brendan Reich, has been engaged as a Trader in ethanol markets since graduating from college in 2011.

8. A highly knowledgeable and experienced Trader, defendant Reich was employed with plaintiff Antimo as a Senior Trader from December 2020-July 2024 before resigning to join Atlas Oil Company as a Senior Trader in Ethanol & Refined Products.

9. Renewable Identification Numbers, or RINs, are credits used to comply with the Renewable Fuel Standard (RFS) program through the United States Environmental Protection Agency (EPA).

2

10. As a Trader in ethanol markets, a component of defendant Reich's operation of his physical ethanol business included the management of RIN credits, which account for a portion of the ethanol's value.

11. With each purchase and sale, RIN credits from Antimo's RIN bank were required to be transferred in parallel to any physical ethanol transfer.

12. Ethanol can be sold without a RIN ("RIN-less ethanol") so that the seller keeps the RIN and subtracts its value from the price of the ethanol, and RINs can also be traded between entities that blend ethanol and gasoline, such that a refiner with excess RINs could sell them to an importer in need of additional RINs.

13. For the majority of defendant Reich's physical ethanol business, transactions included RINs and business was transacted at a price to include RINs.

14. One exception was Antimo's business at Bluewing Terminal in Cameron County, Texas, where Antimo sold RIN-less ethanol to Modern Chemical at a lesser price and then sold the individual RINs to Raizen as part of its general business practice.

15. The Antimo accountant who worked for defendant Reich, L.K., maintained an internal file at all times relevant which included a monthly journal entry to account for the ethanol and RIN balances.

16. The customary practice for "booking" physical ethanol and RIN inventory was as follows:

*Physical Ethanol Value = Physical Ethanol Gallons X Market Price (price including RIN value)*
*RIN Value = ((Total RIN credits – Physical Ethanol Gallons) X RIN Market Price)*

17. The formula utilized could result in a positive or negative (short) RIN value, because traditional ethanol value assumed there was a commensurate RIN credit in the bank, and if there was not a commensurate RIN credit, they would book a short-RIN value for the ethanol.

18. Each month leading up to December 2023, L.K. booked RIN value using the formula described in ¶ 16. At no point in time were there any communications, explanations or approvals given in the accounting department at Antimo to adjust this inventory method utilized for RIN valuation going forward.

### The Defendant's Scheme to Defraud Antimo

19. Beginning in December 2023, L.K. began utilizing a different – and incorrect – calculation to book RIN inventory, based upon total RIN quantity available at the time:

*RIN Value = Total RIN Credits X RIN Market Price*

20. This calculation recorded by L.K. was upon belief performed at the express direction of defendant Reich for purposes of facilitating and concealing his fraudulent activity.

21. This calculation failed to recognize the obligation to maintain RIN credits which supported Antimo's ethanol balance.

22. Under L.K.'s new calculation method performed at the direction of defendant Reich, the amount "booked" in December 2023 was $1,824,980.00 but should have been negative (-$10,140,289.00) under the correct calculation method.

23. This improper calculation resulted in a profit and loss (PNL) variance of $11,965,269 in 2023:

*Total Ethanol Inventory:*   15,439,056 gal
*Total RIN Position:*   2,354,812 RINS
*Valued RIN Position:*   (-13,084,244) RINS X 0.775 = (-$10,140,289.00)

*PNL Swing = (-) actual amount booked – true amount:*
*Reverse Actual Amount Booked:*   $1,824,980.00
*Correct Amount (Short Position):*   $10,140,289.00
*Total PNL Swing (Variance):*   $11,965,269.00

4

24. From December 20 through December 26, 2023, defendant Reich executed a total of $11,292,500 in RIN sales, totaling 14 mg (million gallons) in RINs sold across three separate dates and three separate customers.

25. Selling the RINs at the end of 2023 created a "short" RIN position for Antimo which was not approved and was unprecedented in defendant Reich's tenure with the company.

26. This "short" RIN position, coupled with L.K.'s unapproved and improper RIN inventory valuation change, led to artificial gains in defendant Reich's 2023 PNL in the amount of $11,965,268.00—defendant Reich's actual *reported* 2023 losses were $7,375,521.00, as opposed to his *actual* losses of $19,340,789.00.

27. Between January 4 and March 7, 2024, defendant Reich then quickly purchased a total of $10,040,000 in RINs, 13 mg, across four separate dates and three separate customers.

28. Executing this quick repurchase of RINs allowed defendant Reich to quickly cover his short obligation and reduce the chances the "short" RIN position created by the late-December 2023 trades would be recognized, thus increasing his 2023 performance.

### *Defendant's Incentive Compensation Plan*

29. Defendant Reich was due to make a bonus of $5,531,095.00 in March 2024 based on performance in 2021 and 2022 – this was his deferred compensation.

30. Actual compensation, however, was based upon performance over three years—including 2023 performance.

31. Since defendant Reich reported 2023 losses of only $7,375,521.00 based upon the booking entries made by L.K. at his direction, and his incentive compensation was reduced by 15% of his losses, defendant Reich's ultimate compensation received was only reduced by $1,106,330.00:

*$5,531,095.00 - $1,106,330.00 = $4,424,765.00 Bonus **Paid** in March 2024*

5

32. Had defendant Reich reported his true 2023 losses of $19,340,789.00 and had his compensation reduced by 15% of these losses, his compensation would have been reduced by $2,901,118.35:

*$5,531,095.00 - $2,901,118.35 = $2,629,976.65 Bonus That **Should Have Been Paid** in March 2024*

33. Defendant Reich's fraud led to a bonus overpayment of ($4,424,765.00 - $2,629,976.65) = **$1,794,788.35.**

34. After beginning 2024 with large trading losses he would have to make back (or evade) in order to receive another eventual bonus and having already been paid his deferred incentive compensation in March, defendant Reich then left Antimo in July 2024 in order to begin trading at a new company with a clean slate.

35. Within two weeks of defendant Reich leaving Antimo, he recruited L.K. to join him at his new employer.

### *Antimo Discovers the Defendant's Fraud*

36. The weekend of September 28, 2024, Antimo Controller Jen Bahl discovered the 13 mg in RIN purchases from January through March 2024 while reconciling RINs as the business was being closed-out, and e-mailed defendant Reich – who had since left Antimo and began working at Atlas Oil Company – with the following inquiry on September 30: "Over the weekend as I was putting together our RIN reconciliation – I noticed that we bought 13MM RINS for ~ $10MM in RINS in March 2024. When/how were those RINS initially sold (or how was our RIN balance so low that we needed to buy)?"

37. Defendant Reich responded the same day, stating "RINs were bot partially on a spec basis, but were to cover an e23/24 RIN roll. As we had the large Chicago inventory we needed to roll the RINs to e24 to attach to the physical sales in 2024."

38. Ms. Bahl responded the same day: "Understood why we would need a large roll to e24, however I am not able to find the sale side of the roll anywhere. $10MM is how much cash went out the door in March '24 for 13MM RINS, so we would have had roughly as much coming in, at some point. Do you recall when we sold and to whom?"

39. Defendant Reich responded the same day: "Yes because we had roughly 250 kb of inventory in Chicago. So that's approximately 10.5 mg of inventory for 2024 delivery."

40. Ms. Bahl responded the same day: "Thank you! I'm trying to wrap my head around this, I would think it we sold $11MM worth of RINS in Dec23, we would see inventory value drop by roughly $11MM (give or take market variances ofc). However, when I pull our RIN inventory, we don't have $11MM worth of RINS to sell and inventory value doesn't really change much Dec to Jan. What am I missing? Thank you in advance."

41. On October 1, 2024, Ms. Bahl wrote defendant Reich and L.K. (who had been included on prior e-mails) and stated "Following up on this email. Can you explain why our RIN inventory was booked around 2MM RINS in both Nov & Dec but we sold 14MM RINS to roll out of E23? I would expect to see roughly 14MM RINS EOM Nov and closer to 0 EOM Dec."

42. Defendant Reich responded the same day: "I think the 2 mg of inventory is related to physical ethanol inventory. I think we had closer to 10-14mg of e23 inventory that we were accruing from Jun-Dec via our rinless domestic sales (2-2.5mg/mo) so that was the liquidation/close out."

43. These statements by defendant Reich were materially false, as year-end 2023 records confirmed that Antimo had 15.4 million gallons of physical ethanol for which they needed RINs to "cover," and that Antimo had only 2,067,006 RINs after defendant Reich's transactions in December 2023 – leaving Antimo with a short position of 13,372,050 RINs.

44. The fact that Antimo was actually short over 13 mg RINs after defendant Reich's RIN sales in December 2023 is further substantiated by defendant Reich's purchase of the 13 mg of RINs from January to March 2024 with no excess RINS on close out of the business.

45. Identifying defendant Reich's trades and his materially false assertions justifying the trades led Antimo to discover defendant Reich's wrongful acts in early October 2024.

## **FIRST CLAIM:** *Fraud*

Plaintiff adopts by reference paragraphs one through forty-five (1-45), and in addition, states:

46. In the course of his employment with plaintiff Antimo as a Senior Trader, defendant Reich made false representations of material fact to Antimo, including, but not limited to, false or misleading statements regarding his ethanol sales transactions, false inventory records made at his direction, and later false assertions via e-mail that the RIN sales at issue were made to cover a 2023-2024 RIN roll.

47. Defendant Reich knew that his representations were false when made.

48. Defendant Reich made the false representations intentionally for the purpose of artificially manipulating his sales records in order to induce plaintiff Antimo to award him increased compensation through the bonuses paid to him in two installments in March 2024, and then failed to correct the false representations in order to protect his employment and compensation.

49. Plaintiff Antimo reasonably relied upon defendant Reich's false representations in awarding him $1,794,788.35 more than he was entitled as incentive compensation in March 2024.

WHEREFORE, plaintiff prays for damages against defendant Reich in an amount totaling **$1,794,788.35**, together with its costs incurred herein and any other relief the Court deems just and equitable.

## **SECOND CLAIM:** *Constructive Fraud*

Plaintiff adopts by reference paragraphs one through forty-nine (1-49), and in addition, states:

50. In the course of his employment with plaintiff Antimo as a Senior Trader, defendant Reich maintained a fiduciary and confidential relationship with plaintiff Antimo insofar as he was entrusted with making large-scale trades of ethanol assets on Antimo's behalf which impacted Antimo's business operations and revenue.

51. While this relationship existed, defendant Reich made false representations regarding his ethanol sales transactions, ordered the creation of false records by accounting and made false statements to Antimo regarding the nature and purpose of the RIN-less ethanol transactions.

52. Defendant Reich's false representations were a betrayal of his confidential relationship with Antimo and a breach of duty imposed by this relationship to communicate accurate and honest accounting of his sales and inventory so that his "icomp" payments would be calculated accurately and the business could be managed successfully.

53. Plaintiff Antimo relied upon defendant Reich's false representations and the confidence placed in him to perform and discharge his duties.

54. Plaintiff Antimo has suffered damages as a direct and proximate result of defendant Reich's constructive fraud, including, but not limited to, lost revenues tied to overpayments of "icomp" tendered based upon the false and misleading data provided by defendant.

WHEREFORE, plaintiff prays for damages against defendant Reich in an amount totaling **$1,794,788.35**, together with its costs incurred herein and any other relief the Court deems just and equitable.

## **THIRD CLAIM:** *Breach of Fiduciary Duty*

Plaintiff adopts by reference paragraphs one through fifty-four (1-54), and in addition, states:

55. A fiduciary and confidential relationship existed between defendant Reich and Antimo, as defendant Reich was a Senior Trader entrusted with making large-scale sales of ethanol assets on behalf of Antimo which directly impacted its revenue.

56. Plaintiff Antimo entrusted defendant Reich to act on behalf of the business interests of Antimo through his employment as a Senior Trader.

57. Defendant Reich accepted, assumed and was aware of this trust and confidence and his fiduciary duties owed to plaintiff through his employment.

58. Defendant Reich was in a position of superior knowledge and access to information concerning the nature of his ethanol transactions.

59. Defendant Reich had authority and discretion in the operation of plaintiff's trades and the sale of ethanol, including RIN-less ethanol, and plaintiff depended upon defendant to exercise this authority and discretion in accordance with the trust and confidence afforded to him and the fiduciary duties arising therefrom.

60. Defendant Reich breached these fiduciary duties through false or misleading entries and records regarding his ethanol sales transactions and his false representations made to management in order to conceal his improper actions.

61. Plaintiff has suffered damages as a direct and proximate result of defendant Reich's breach of fiduciary duties, including, but not limited to, overpayment of bonuses to the defendant.

WHEREFORE, plaintiff prays for damages against defendant Reich in an amount totaling **$1,794,788.35**, together with its costs incurred herein and any other relief the Court deems just and equitable.

## FOURTH CLAIM: *Unjust Enrichment*

Plaintiff adopts by reference paragraphs one through sixty-one (1-61), and in addition, states:

62. Defendant Reich was enriched through payments from plaintiff in the form of the bonus overpayments tendered in March 2024.

63. Defendant Reich retained the overpaid bonus paid by plaintiff and left his employment with plaintiff.

64. Defendant Reich's retention of the overpaid bonus is unjust and at the expense of plaintiff because it was based upon defendant Reich's false representations about the nature of his RIN-less ethanol sales transactions, his false records, his improper trades and his dishonest communications meant to further conceal his actions.

65. Accordingly, defendant Reich should be ordered to return such payments in an amount totaling **$1,794,788.35**, together with plaintiff's costs incurred herein and any other relief the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, ANTIMO, LLC, respectfully prays for damages against the defendant in the amount of **$1,794,788.35**, together with its costs incurred herein, any other economic losses determined over the course of discovery and any other relief the Court deems just and equitable, including any reasonable attorney's fees, pre- or post-judgment interest allowed under the law.

## DEMAND FOR JURY TRIAL

Plaintiff ANTIMO, LLC demands a trial by jury pursuant to K.S.A. 60-238 on all claims and issues so triable.

Respectfully submitted,

HUTTON & HUTTON

<u>*/s/ Blake A. Shuart, #24463*</u>
Blake A. Shuart, #24463
J. Darin Hayes, #16755
Kaylea Knappenberger McGrath, #28902
8100 E. 22nd St. N., Bldg. 1200
Wichita, KS 67226
Phone: (316) 688-1166
Fax: (316) 686-1077
E-Mail: Blake.Shuart@huttonlaw.com
*Attorneys for Plaintiff*

ELECTRONICALLY FILED
2025 Mar 14 AM 11:04
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2025-CV-000520
PII COMPLIANT

IN THE <u>18th</u> JUDICIAL DISTRICT
DISTRICT COURT OF <u>SEDGWICK</u> COUNTY, KANSAS

| | |
|---|---|
| <u>Antimo, LLC,</u>   ) <br> Plaintiff,   ) <br> V   ) <br> <u>Brendan Reich,</u>   ) <br> Defendant.   ) | Case No. <u>SG-2025-CV-000520</u> |

Defendant's Name and Address:
<u>Brendan Reich</u>
<u>1277 Smith Ridge Road</u>
<u>New</u>
<u>Canaan, CT 06840-2335</u>

Proceeding Pursuant to K.S.A. Chapter 60

# SUMMONS

To: <u>Brendan Reich</u>
(Defendant's name)

A civil lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached petition or a motion under K.S.A. 60-212. Under Kansas Supreme Court Rule 113, you may seek from the clerk of the court an extension of up to 14 additional days to serve and to file an answer or a K.S.A. 60-212 motion.

If you fail within 21 days to serve and to file an answer or a K.S.A. 60-212 motion or obtain a Rule 113 extension, the court may enter default judgment against you for the relief

Rev. 12/2022   KSJC                                   1

demanded in the petition. If you were served outside of Kansas, however, the court may not enter default judgment against you until at least 30 days after service of this summons.

The answer or K.S.A. 60-212 motion must be served on the plaintiff's attorney, or the plaintiff if plaintiff has no attorney, at the following address:

Blake Shuart
(Attorney's name or Plaintiff's name)

8100 E. 22nd St. North
Building 1200
Wichita, KS  67226

(Attorney's address or Plaintiff's address)

You also must file your answer or K.S.A. 60-212 motion with the court.

When you file an answer, you must state as a counterclaim(s) any related claim(s) that you may have against the plaintiff. If you fail to do so, you will thereafter be barred from making such claim(s) in any other action.



Clerk of the District Court.

By Elizabeth Shockley
Clerk or Deputy

**Documents to be served with the Summons**

Rev. 12/2022  KSJC

2

ELECTRONICALLY FILED
2025 Mar 25 PM 4:38
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2025-CV-000520
PII COMPLIANT

**STATE OF KANSAS**
**In The Eighteenth Judicial District**
**District Court, Sedwick County**

**AFFIDAVIT OF SERVICE**


*258739*

Index no : SG-2025-CV-000520

**Antimo LLC**

        Plaintiff(s),

vs.

**Brendan Reich**

        Defendant(s).

_____/

**STATE OF CONNECTICUT**
                    ss: East Hartford
**HARTFORD COUNTY**

**Eric Rubin**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action. I reside in the State of Connecticut.

On **03/21/2025** at **12:55 PM**, I served the within **Summons and Petition Jury Trial Demanded** on **Brendan Reich at 1277 Smith Ridge Road, New Canaan, CT 06840** in the manner indicated below:

**SUITABLE AGE:** By delivering a true copy of each to **Kristin Jette, Co-resident**, a person of suitable age and discretion. Said premises is recipient's usual place of abode within the state.

Comments: **Spoke to subject on phone from site. Authorized Co-resident to accept service.**

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Perceived Gender | Perceived Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Female | White | Blonde | 41 | 5'6" | 125 |
| Other Features: | | | | | |

Your deponent asked the person spoken to whether the Recipient was in the active military service and received a negative reply. Upon information and belief I have; being based on the conversations and observations above narrated, Recipient is not in the military service.

Sworn to and subscribed before me on
March 24, 2025
by an affiant who is personally known to
me or produced identification.

_____
NOTARY PUBLIC
My Commission Expires: _____

X _____
Eric Rubin
Emery Goad
250 S Laura
Wichita, KS 62711
316-267-1357
Atty File#:

ABBY J. CHANTRY
NOTARY PUBLIC
MY COMMISSION EXPIRES  3-31-2026

In the Eighteen Judicial District
District Court, Sedgwick County, Kansas
Civil Department

Antimo, LLC
Plaintiff

vs.

Case No. SG-2025-CV-000520

Brendan Reich
Defendant

Pursuant to Chapter 60 of
Kansas Statutes Annotated.

### Clerk's Order For Additional Time
### To Plead to Petition

Now, on this 11th day of April, defendant(s) Brendan Reich

is/are hereby granted (14) additional days within which to answer or file other pleading to

the plaintiff's petition.

By order of the clerk, pursuant to Supreme Court Rule 113.

Deputy Clerk of the District Court: _____

Submitted by:

Name    Brendan Reich
Address 1277 Smith Ridge Road, New Canaan, CT 06840-2335

Telephone 201-787-3464

Signature _____

### Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing Clerks Order for Additional Time to Plead to Petition was deposited in the US mail, postage pre-paid, on this 11th day of April, addressed to the following person.

Name    Blake Shuart
Address 8100 E. 22nd St. North, Building 1200, Wichita, KS 67226

DC18

# Maurita Gatewood

**From:** RightFax@sedgwick.gov
**Sent:** Friday, April 11, 2025 12:35 PM
**To:** #Sedgwick - Civil Fax
**Subject:** A fax has arrived from remote ID '19728136277'.
**Attachments:** 00025FBE.pdf

CAUTION: This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

A fax has arrived from remote ID '19728136277'.

------------------------------------------------------------

------------------------------------------------------------

4/11/2025 12:33:27 PM Transmission Record
    Received from remote ID: 19728136277
    Inbound user ID CIVILFAX, routing code 5352
    Result: (0/352;0/0) Success
    Page record: 1 - 2
    Elapsed time: 01:03 on channel 1

4/11/2025 12:34:55 PM Conversion
    Created 1 file(s) in format application/pdf.raster
    (RIGHTFAXAPP:FaxConverter)

1