## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANTIMO, LLC, | ) | |
| | ) | Case No. 6:25-cv-01071-KHV-GEB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRENDAN REICH, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT BRENDAN REICH'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

For his Brief in Support of his Motion to Dismiss the First Amended Complaint (Doc. 12) (the "Amended Complaint") for Plaintiff's failure to plead its fraud-based claims with sufficient particularity under Fed. R. Civ. P. 9(b) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Brendan Reich states as follows:

## I. INTRODUCTION

Defendant Brendan Reich ("Mr. Reich") worked for Plaintiff Antimo, LLC ("Antimo") as a commodities trader in ethanol markets up until July 2024 when he resigned to join a competitor. Mr. Reich was a highly successful trader generating enormous profits for Antimo. As a result, he was awarded a $4,424,765.00 bonus in March 2024. Antimo now seeks to recoup $1,794,788.35 of that bonus based on Mr. Reich's alleged fraud, fraud by silence, constructive fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation, and constructive trust.[1]

Each of Antimo's seven causes of action is based on the underlying theory that Mr. Reich made changes to the supposed customary formula used to calculate profits and losses for ethanol

---

[1] As outlined in his motion to dismiss the initial Complaint (Doc. 10 and Doc. 11), this action is Antimo's latest effort to quell competition after Mr. Reich joined a competitor and two other employees subsequently joined him.

sales. However, these causes of action all succumb to the same fatal flaw—Mr. Reich had no role in the preparation of Antimo's financial records. Antimo alleges its own accountant, "L.K.," maintained the financial records for Mr. Reich's transactions and L.K. changed the calculation for determining profits and losses. As a result, Antimo allegedly overpaid Mr. Reich's bonus by $1,794,788.35. Yet, despite these allegations, Antimo has not sued L.K., does not allege that she was negligent or engaged in any intentional or fraudulent conduct, and does not even mention L.K. by name. Instead, Antimo trumps up several fraud-based claims against Mr. Reich by claiming L.K. changed the formula at Mr. Reich's direction. Antimo does not allege any facts to support its speculation. Instead, Antimo circularly alleges Mr. Reich did it because he must have done it.

Each of Antimo's fraud-based claims should be dismissed in their entirety with prejudice. First, there was nothing false or concealed about Mr. Reich's trades.[2] The trades were accurately documented, openly reported, and administered and executed by Antimo, and Antimo does not allege otherwise. All RIN trades are reported and tracked through the EPA's Moderated Transaction System (EMTS), of which Antimo is a registered user and receives notification of all its trades. Furthermore, Antimo is required by law to submit to the EPA certified quarterly and annual compliance reports for its RIN business and have a letter of attestation submitted from an EPA registered auditor. Moreover, the trades did not harm Antimo—indeed they were profitable.

---

[2] Mr. Reich's Renewable Identification Numbers (RINs) transactions served two commercial purposes. First, RINs are only valid for compliance with the EPA's Renewable Fuel Standard (RFS) program for the year they are generated and the following year. For example, RINs generated in 2022 can only be used for compliance in 2022 and 2023. After this period, RINs expire and can no longer be used for compliance purposes. At the end of 2023, Mr. Reich sold 2022 RINs that were set to expire and purchased 2024 RINs in the first quarter of 2024 that could be used for compliance through 2025. The term used in the industry for these trades is "rolling the RINs." Second, Mr. Reich sold RINs at the end of 2023 and then purchased RINs in 2024 when the price decreased obtaining a profit for Antimo. As acknowledged in the Amended Complaint, speculative trading, a form of trading RINs in which traders look to profit from short-term market price movements, is permissible.

Second, Antimo alleges the financial records were prepared by Antimo's accountant, not Mr. Reich. While Antimo alleges Mr. Reich directed L.K. to change the accounting formula, the allegations are pure speculation. In its initial Complaint, Antimo made these allegations "***upon belief***." With the benefit of Mr. Reich's motion to dismiss the initial Complaint and time to scour its records for purported facts to support its "belief," Antimo was unable to come forward with ***any facts*** to support its speculation. Conclusory statements lacking any information or particulars cannot form the basis for fraud.

Third, Mr. Reich's alleged false emails in September and October 2024 are non-actionable opinion statements. Even if they could be viewed as statements of fact, Antimo could not have relied on those statements in determining Mr. Reich's bonus because Antimo paid Mr. Reich his bonus in March 2024—approximately six months before the allegedly false emails.

Fourth, Antimo cannot establish justifiable reliance for any alleged misrepresentation because a plaintiff cannot justifiably rely on a representation it knows to be false. According to Antimo's allegations, Antimo's accountant knew the losses reported on the company's financials were based on an improper formula and included Mr. Reich's December 2023 trades. Therefore, Antimo could not have justifiably relied on those records in determining Mr. Reich's bonus.

The unjust enrichment and constructive trust claims should be dismissed for the independent reasons that Mr. Reich's compensation is subject to a contract and constructive trust is an equitable remedy—not an independent cause of action. Accordingly, Antimo's Amended Complaint should be dismissed in its entirety with prejudice.

## II.     NATURE OF THIS MATTER & RELIEF SOUGHT

Plaintiff asserts multiple fraud-based claims against Mr. Reich related to Mr. Reich's former employment with Plaintiff as a commodities trader in ethanol markets. Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## III.    STATEMENT OF FACTS[3]

### A.     Parties

Antimo is a global trading company focused on commodity markets. Amended Complaint ("Compl.") (Doc. 12) at ¶ 1. Mr. Reich is a highly knowledgeable and experienced Trader. *Id.* at ¶¶ 7-8. Mr. Reich was employed by Antimo as a Senior Trader from December 2020 to July 2024. *Id.* at ¶ 8. In July 2024, Mr. Reich resigned from Antimo to join a competitor. *Id.*

### B.     Antimo's Ethanol Business

RINs are credits used to track the production, use and trading of renewable fuels such as ethanol to comply with the RFS program. *Id.* at ¶ 9-13. Ethanol can be sold with a RIN or without a RIN. *Id.* at ¶¶ 15-16. RINs can also be traded separate from ethanol. *Id.* at ¶ 16. Speculative trading ("spec trading") of RINs, a form of trading in which traders look to profit from short-term market price movements, is permitted. *Id.* at 12.

Mr. Reich's ethanol business included the management of RINs. *Id.* at ¶ 14. It was within Antimo's standard business practice to sell individual RINs to Raizen North America Inc. *Id.* at ¶ 20. Outside of selling RINs to Raizen, Antimo's general business practice and Mr. Reich's 2020 "Growth Plan" allegedly did not include trading individual RINs. *Id.* at ¶¶ 17-19, 21-22.

---

[3] The facts are taken from the Amended Complaint. The factual allegations are accepted only for purposes of this motion as is required. Mr. Reich disagrees with many of Plaintiff's factual allegations, and Mr. Reich reserves his right to challenge Plaintiff's allegations later in this litigation.

4

### C.    Mr. Reich's RIN Transactions

On December 19, 2023, Mr. Reich messaged Antimo's accountant, "L.K.," in Antimo's intra-office messaging system and asked her to "give [her] pov [point-of-view] on RINs position." *Id*. at ¶ 34. Later the same day, Mr. Reich messaged L.K. and asked, "are we set up to trade with exxon?" *Id*. at ¶ 36. Between December 20 and December 26, 2023, Mr. Reich executed a total of $11,292,500 in RIN sales, totaling 14 million gallons in RINs sold across three separate dates and three separate customers. *Id.* at ¶¶ 37-40. These sales created a "short" RIN position for Antimo, which Antimo alleges was not approved by Antimo. *Id.* at ¶¶ 41-43. Between January 4 and March 7, 2024, Mr. Reich purchased a total of $10,040,000 in RINs (13 million gallons) across four separate dates and three separate customers. *Id.* at ¶ 45.

### D.    Antimo's Accounting Change and the Impact on Mr. Reich's Bonus

Antimo had a "customary practice" for "booking" physical ethanol and RIN inventory. *Id.* at ¶ 24-25. Each month leading up to December 2023, Antimo's accountant, L.K., calculated "RIN value" using the alleged customary practice. *Id.* at ¶ 26. In December 2023, L.K. began utilizing a different calculation to book RIN inventory. *Id.* at ¶ 48.

Antimo alleges Mr. Reich directed Antimo's accountant to alter the way RINs were booked because there is no other reasonable explanation for the alleged change. *Id*. at ¶¶ 32-33, 51. The alleged new calculation utilized by L.K. resulted in a profit and loss variance of $11,965,269 in 2023. *Id.* at ¶¶ 49-50, 52-54. As a result of the variance, Antimo alleges it overcompensated Mr. Reich in March 2024 in the amount of $1,794,788.35. *Id.* at ¶¶ 55-59.

### E.    Mr. Reich's Post-Employment Emails

Antimo alleges its Controller Jen Bahl exchanged emails with Mr. Reich between September 28, 2024 and October 1, 2024. *Id.* at ¶¶ 63-69. On September 28, 2024, Mr. Reich

wrote: "RINs were bot [sic] partially on a spec basis, but were to cover an e23/24 RIN roll. As we had the large Chicago inventory we needed to roll the RINs to e24 to attach to the physical sales in 2024." *Id.* at ¶ 64. On the same date, Mr. Reich wrote: "Yes because we had roughly 250 kb of inventory in Chicago. So that's approximately 10.5 mg of inventory for 2024 delivery." *Id.* at ¶ 66. On October 1, 2024, Mr. Reich wrote: "I think the 2 mg of inventory is related to physical ethanol inventory. I think we had closer to 10-14mg of e23 inventory that we were accruing from Jun-Dec via our rinless domestic sales (2-2.5mg/mo) so that was the liquidation/close out." *Id.* at ¶ 69. Antimo alleges this statement was false because Antimo alleges it had 15.4 million gallons of physical ethanol at year end 2023. *Id.* at ¶ 70.

Based on these allegations, Antimo's Amended Complaint asserts claims for fraud (*id.* at ¶¶ 80-83), fraud by silence/concealment (*id.* at ¶¶ 84-91), constructive fraud (*id.* at ¶¶ 92-96), breach of fiduciary duty (*id.* at ¶¶ 97-103), unjust enrichment (*id.* ¶¶ 104-107), negligent misrepresentation (*id.* ¶¶ 108-111), and constructive trust (*id.* ¶¶ 112-114).

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Plaintiff's Fraud-Based Claims Should Be Dismissed

Antimo asserts four separate fraud claims against Mr. Reich—fraud, fraud by silence/fraudulent concealment, constructive fraud, and negligent misrepresentation. Antimo's conclusory and speculative allegations fail to meet Rule 9(b)'s pleading standard and fail to state a claim upon which relief can be granted.

"Rule 9(b) states that 'in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.'" Fed. R. Civ. P. 9(b); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006). "To plead fraud with particularity, plaintiff's [ ] Complaint must contain 'factual allegations regarding the who, what,

6

when, where and how of the alleged claims.'" *Wood v. LP Conversions, Inc.*, No. 14-2228-CM, 2014 WL 5430243, at *4 (D. Kan. Oct. 24, 2014) (citation omitted). "The complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Cimarron Lumber & Supply Co. v. McLiney Lumber & Supply, LLC*, No. 12-2240-JAR, 2013 WL 1308708, at *3 (D. Kan. Mar. 29, 2013) (citation omitted). Mere conclusory allegations of fraud will not suffice. *Koch v. Koch Indus.*, No. 85-1636-C, 1991 WL 241814, at *5 (D. Kan. Oct. 24, 1991).[4]

### a.  Mr. Reich Did Not Make a False Statement of Fact or Conceal a Fact

Antimo's fraud and negligent misrepresentation claims require Antimo to allege a false statement of material fact, and the fraud by silence requires Antimo to allege concealment of a material fact.[5] *Lee v. Kansas State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, at *11 (D. Kan. June 7, 2013); *Stechschulte v. Jennings*, 297 Kan. 2, 21-22, 298 P.3d 1083 (2013).

Antimo alleges that Mr. Reich made three categories of "false representations:" (1) "fraudulent sales transactions," (2) "false accounting records," and (3) "later false assertions via e-mail[.]" Compl., at ¶ 81; *see also id.* at ¶ 93 (basing constructive fraud claim on same allegations); *id.* ¶¶ 108-109 (limiting negligent misrepresentation claim on alleged false 2023 PNL statement). Similarly, Antimo bases its fraud by silence claim on Mr. Reich allegedly concealing: (1) RIN sales and (2) directing Antimo's accountant to change accounting formulas. Compl., ¶ 84.

---

[4] *Watson v. Mylan Pharms., Inc.*, No. 18-04137-CM-JPO, 2019 WL 3252745 (D. Kan. July 18, 2019) ("Fraudulent concealment must be pleaded with particularity[.]"); *Pine Tel. Co. v. Alcatel Lucent USA Inc.*, 617 F. Appx. 846, 860 (10th Cir. 2015) (constructive fraud must be pleaded with particularity); *Wheeler v. Exxon Mobil Corp.*, No. CV 19-4025-KHV, 2019 WL 5188738, at *8 (D. Kan. Oct. 15, 2019) (same).
[5] Constructive fraud requires a "breach of a legal or equitable duty." *See Estate of Draper v. Bank of Am. N.A.*, 288 Kan. 510, 519, 205 P.3d 698 (2009).

### i.  Mr. Reich's RIN Transactions

Simply labeling Mr. Reich's RIN transactions "fraudulent" does not make them fraudulent. The RIN trades were all legitimate trades that were accurately documented, openly reported, and physically executed upon by Antimo. As Antimo acknowledges, selling RINs on their own (separate from ethanol) and spec trading is perfectly permissible. Compl., ¶¶ 12, 16. Antimo does not, and cannot, allege that the trades violated any law, were unreported or inaccurately reported, or that the trade documentation was falsified or concealed. Antimo was fully aware, or should have been aware, of each trade because it received notice of the trades through EMTS and Antimo is required by law to submit to the EPA certified compliance reports for its RIN transactions on an annual and quarterly basis and have its records audited annually. 40 C.F.R. §§ 80.145(c) and 80.1464(c). Moreover, Antimo alleges its own accountant knew of the trades as she corresponded with Mr. Reich about the December 2023 RIN trades and arranged for the transactions. Compl., ¶¶ 34-40. Significantly, Antimo acknowledges, as it must, that it had access to documentation evidencing the trades. *See* Compl., ¶¶ 63-69 (alleging Antimo "discovered" these transactions when closing out the RIN business).[6] When Antimo's Controller questioned Mr. Reich about his trades in the late September of 2024 email exchange, Mr. Reich explained to her exactly what they were—a combination of spec trades and to cover a 2023/2024 RIN roll. Compl., at ¶ 64.

Antimo does not, and cannot, allege anything false about Mr. Reich's trades or that the trades were concealed from Antimo. Instead, Antimo alleges the trades "contradicted Antimo's

---

[6] The deadline to submit the 2023 annual compliance report and fourth quarter 2023 quarterly compliance report was March 31, 2024. 40 C.F.R. § 80.1451(f). The deadline to submit the annual attest engagement for the 2023 reporting year was June 1, 2024. 40 C.F.R. § 80.1464(d)(2). In each case, Antimo's corporate officer was required to certify the accuracy of its records. 40 C.F.R. § 80.1451(c)(3) and 40 C.F.R. § 80.1464(e). The suggestion that Mr. Reich concealed his RIN trades from Antimo and Antimo did not "discover" them until September 28, 2024 is incredulous.

general business practices" and were beyond the scope of Mr. Reich's trading authority and his 2020 "Growth Plan." Compl., ¶¶ 41, 47. However, contradicting company policy, authority, or a "Growth Plan" does not amount to fraud where there has been no false representation or concealment.[7] Therefore, while Antimo alleges some of Mr. Reich's RIN trades contracted company policy, there was nothing false or fraudulent about the trades.

### ii. Antimo's Accounting Records

Antimo alleges **_its accountant_** created certain records contrary to Antimo's "customary practice" for booking RINs. Compl., ¶¶ 24, 48. Therefore, even if the usage of a non-customary accounting formula could be the basis for fraud, Antimo acknowledges that the accounting records were not made by Mr. Reich. Compl. at ¶¶ 48. Antimo's only allegation that Mr. Reich himself engaged in any fraudulent conduct is its conclusory and speculative allegation that Mr. Reich ordered or directed L.K. to change the formula for booking RINs. Compl., ¶ 32. After Mr. Reich pointed out the inadequacy of Antimo's allegations made "upon belief," Antimo attempted to resolve the deficiency by simply replacing the term "upon belief" with the allegation that Mr. Reich must have directed L.K. to change the accounting formula because "there is no [other] reasonable explanation."[8] Compl., ¶ 51.

---

[7] Even if a violation of company policy could form the basis of fraud on its own (it cannot), according to Antimo's own allegations, Mr. Reich's December 26, 2023 sale of three million RINs to Raizen North America Inc. for $2,340,000 was consistent with Antimo's general business practice. Compl., ¶¶ 19-20, 39.

[8] When allegations of fraud implicate an agency relationship, courts have elevated the pleading standard for agency to that of Rule 9(b). _Wood_, 2014 WL 5430243, at *4 (citing _Lachmund v. ADM Investor Servs., Inc.,_ 191 F.3d 777, 783 (7th Cir.1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim.")); _see also Golden Rule Ins. Co. v. Tomlinson_, 300 Kan. 944, 954, 335 P.3d 1178, 1188 (2014) (providing requirement for forming an agency relationship under Kansas law).

Antimo's Amended Complaint fares no better. While Antimo removes the term "upon belief," the substance of its speculative and conclusory allegations remains the same. In order to survive a motion to dismiss a fraud claim where the factual allegations are pleaded "on information and belief"—whether or not explicitly labeled "on information and belief"—a plaintiff must meet two criteria: (1) "the facts in question are peculiarly within the opposing party's knowledge"; and (2) "the complaint sets forth the factual basis for the plaintiff's belief." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (citation omitted); *Regence Bluecross Blueshield of Utah*, 472 F.3d at 727. Antimo has not satisfied either requirement. Whether L.K. changed the formula for calculating RIN value is not a fact peculiarly within Mr. Reich's knowledge. Antimo's own accountant at the time, L.K., has knowledge of whether she made changes to the calculation at Mr. Reich's direction. Additionally, Antimo, who employed both L.K. and Mr. Reich, has access to their communications and company records.

Additionally, Antimo's complaint does not set forth any basis for its purported belief that Mr. Reich directed L.K. to make changes to the calculation of RIN value. The relaxed standard is not a license to base claims of fraud on speculation and conclusory allegations. *U.S. ex rel. Smith v. The Boeing Co.*, No. CIV.A. 05-1073-WEB, 2006 WL 542851, at *5, fn. 4 (D. Kan. Feb. 27, 2006). But that is exactly what Antimo has done. Antimo speculates that because Mr. Reich allegedly benefited from an accounting error, Mr. Reich must have directed the accounting change. Compl., ¶ 51. As purported support for this conclusory allegation, Antimo now alleges two benign communications from Mr. Reich to L.K. on December 19, 2023 that do not come close to supporting its speculative theory:

- Asking L.K. to "give [her] pov [point-of-view] on RINs position" (Compl., ¶ 34); and

- "are we set up to trade with exxon?" Compl., ¶ 36.

From these two communications, Antimo extrapolates that Mr. Reich and L.K. must have had an earlier conversation in which Mr. Reich ordered, directed or deceived L.K. into changing Antimo's accounting methods. Compl., ¶¶ 33-34. Antimo's speculation is wholly unsupported by its *factual* allegations. Accordingly, Antimo's allegations are insufficient to state a claim under the pleading standards of Rule 9(b), and Antimo's fraud claims should be dismissed.[9]

### iii.  Mr. Reich's Post-Employment Emails

Antimo cites three emails Mr. Reich sent on September 28, 2024 and October 1, 2024. Compl., at ¶¶ 64, 66, 69. While Antimo baldly concludes that "[t]hese statements by defendant Reich were materially false[,]" Antimo only alleges why Mr. Reich's statement about the ethanol inventory at the end of 2023 was false. *Id.* at ¶ 70. Even if any of these statements were false, they are non-actionable opinion statements.

To constitute actionable fraud, the alleged representation must relate to a fact, as opposed to mere opinions. *Timi v. Prescott State Bank*, 220 Kan. 377, 389, 553 P.2d 315, 325 (1976). Mr. Reich's email statements were made approximately ten months after the fact, after Mr. Reich had left Antimo's employ, and without access to company records. Mr. Reich repeatedly qualified his statements with "I think" and expressed equivocation (*e.g.*, "roughly," "approximately" and providing ranges). *See id.* (holding alleged misrepresentations were patently matters of opinion where "the statements in question [were] equivocal, vague and indefinite. Many of them are clearly qualified by the statement, 'so far as I know'."); *see also* Restatement (Second) of Torts § 538A (1977) ("The difference is one between 'This is true,' and 'I think this is true, but I am not sure.'"). Therefore, Antimo's fraud-based claims cannot be based on these opinion statements.

---

[9] Because Mr. Reich did not direct Antimo's accountant to make any changes, and Antimo has not alleged sufficient facts that he did, he could not have concealed the allegedly incorrect formula used to calculate profits and losses.

**b. Antimo Did Not Justifiably Rely on an Alleged False Statement or Concealed Material Fact**

It is an elementary rule of the law of fraud that a plaintiff must show justifiable reliance on the alleged misrepresentations and resulting detriment. *Sigg v. Dist. Ct. of Allen Cnty., Kansas, 31st Jud. Dist.*, No. CIV.A. 06-2436-KHV, 2007 WL 913926, at *12 (D. Kan. Mar. 23, 2007) (granting motion to dismiss for failure to allege justifiable reliance); *Stechschulte*, 297 Kan. at 21-22. Where a plaintiff knows or has reason to know of facts which make its reliance unreasonable, the plaintiff is not justified in relying on such statements. *Goff v. Am. Sav. Ass'n of Kansas*, 1 Kan. App. 2d 75, 82, 561 P.2d 897, 903 (1977); *Van Deelen v. City of Kansas City, Mo.*, No. CIV.A. 05-2028, 2005 WL 3050151, at *13 (D. Kan. Nov. 14, 2005) (granting motion to dismiss fraud claim because of no allegations of justifiable reliance).

Despite Antimo's claim that it reasonably relied on Mr. Reich's alleged misrepresentations and concealment (Compl., ¶¶ 83, 89), Antimo could not have as a matter of law. Accepting Antimo's allegations as true, Antimo's accountant had full knowledge of the RIN trades,[10] and the formula used to calculate Mr. Reich's 2023 profit and losses. Compl., ¶¶ 36-40, 48-53. Therefore, according to Antimo's allegations, Antimo's accountant knew that the reported December 2023 losses for Mr. Reich were based on the 2023 RIN transactions and an allegedly non-customary calculation. Compl., ¶¶ 24, 26, 34-40, 48-49.

The Kansas Supreme Court has recognized corporate knowledge may come from an employee. *Kelly v. Morton Salt, Inc.*, No. 6:20-CV-01352-TC, 2023 WL 172129, at *5 (D. Kan. Jan. 12, 2023), *appeal dismissed*, No. 23-3006, 2023 WL 4533232 (10th Cir. Apr. 5, 2023) (citing

---

[10] As discussed above, notwithstanding L.K.'s knowledge, Antimo had independent knowledge at the time it paid Mr. Reich his bonus, as its corporate officer had a legal obligation to review and certify the accuracy of its RIN records to the EPA on or before March 31, 2024. 40 C.F.R. § 80.1451.

*City of Ark. City v. Anderson*, 243 Kan. 627, 762 P.2d 183, 189 (1988) ("A corporation is an artificial person; it may acquire knowledge only through real people—its officers, agents, or employees.")). Antimo's accountant learned of the alleged fact that Mr. Reich's reported losses were allegedly based on Mr. Reich's December 2023 RIN transactions and a non-customary formula during her duties as the company's accountant. *See Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 335 P.3d 1178, 1190 (2014). Antimo has not alleged that L.K. engaged in intentional or fraudulent conduct contrary to her employer's interests. Therefore, her knowledge is imputed to her employer, even if she never communicated her knowledge to her employer. *Conner v. Koch Oil Co.*, 245 Kan. 250, 777 P.2d 821, 824 (1989) (citation omitted). Thus, Antimo could not have justifiably relied on the financial records prepared by L.K. in issuing Mr. Reich's bonus payment.

Antimo also could not have justifiably relied on Mr. Reich's alleged emails in determining and paying Mr. Reich's bonus. Mr. Reich's alleged false emails were sent on September 28, 2024 and October 1, 2024—six months *after* Antimo paid Mr. Reich's bonus in March of 2024. Compl., ¶¶ 63-69, 83. Therefore, it is a factual impossibility for Antimo to have relied on the emails in awarding Mr. Reich's bonus in March 2024, and any supposed reliance could not have been the cause of allegedly overpaying Mr. Reich. *See In re Syngenta AG Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 489098, at *9 (D. Kan. Jan. 19, 2018) (granting motion to dismiss where plaintiff "has not stated a plausible claim of reasonable reliance before Spring 2012 that caused harm resulting from the embargo beginning in November 2013").[11]

---

[11] Mr. Reich's emails also cannot form the basis of constructive fraud or breach of fiduciary duty claims because Antimo does not allege Mr. Reich owed Antimo a fiduciary duty after he resigned from employment with Antimo. *See* Compl., ¶ 92, ¶ 97.

### c.  Mr. Reich's RIN Transactions Did Not Cause Antimo Damage

Causation is an essential element of all Antimo's fraud claims. *Anderson v. Martin Brower Co.*, No. 93-2333-JWL, 1994 WL 398241, at *3, fn. 2 (D. Kan. July 22, 1994); *Balfour v. Medicalodges, Inc.*, No. CIV.A. 05-2086-KHV, 2006 WL 314521, at *5 (D. Kan. Feb. 9, 2006) (dismissing fraud claim because "no plaintiffs set forth facts as to the harm caused by their reliance on defendant's alleged misrepresentation"); *see also TBG, Inc. v. Bendis*, 841 F. Supp. 1538, 1558 (D. Kan. 1993) ("[C]ausation requires a causal link between the alleged misrepresentation or omission and the plaintiff's loss.") (citation omitted);[12] *Stechschulte*, 297 Kan. at 21-22; *Estate of Draper*, 288 Kan. at 519.

Here, according to Antimo's own allegations, L.K.'s use of a new accounting formula— not Mr. Reich's RIN transactions—caused Antimo's alleged damages. Mr. Reich allegedly sold fourteen million RINs in December 2023 for $11,292,500 and purchased 13 million RINs between January and March 2024 for $10,040,000. Compl., ¶¶ 40, 45. Said another way, Mr. Reich's RIN transactions were profitable for Antimo. The damage Antimo allegedly sustained (allegedly overpaying Mr. Reich's bonus) was allegedly caused by Antimo's accountant using a new formula for calculating profits and losses—not the trades. Comp., ¶¶ 48-59. According to Antimo's own allegations, had its accountant used its alleged customary accounting formula, it would not have suffered any damage—even if Mr. Reich made the same exact RIN transactions. Comp., ¶¶ 53-54. Therefore, the cause of Antimo's alleged harm was Antimo's accountant allegedly changing the customary accounting formula. As discussed above, Mr. Reich was not involved in the preparation

---

[12] The *TBG* court addressed causation in the context of Section 10(b) and what securities law refers to "loss causation." "[W]hat securities lawyers call 'loss causation' *is* the standard common law fraud rule[.]" *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683–84 (7th Cir. 1990).

of the company's accounting records and Antimo has failed to allege sufficient facts that Mr. Reich directed L.K. to change the formula.

**B.    The Unjust Enrichment Claim Should Be Dismissed because Mr. Reich's Bonus Is Governed by Contract**

Kansas courts have consistently held that unjust enrichment claims are unavailable when a valid, enforceable contract governs the parties' relationship. *See, e.g.*, *Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 45 Kan. App. 2d 119, 123, 243 P.3d 1106 (2010). Here, Antimo alleges Mr. Reich's bonus payment is governed by a valid and enforceable contract. Compl., ¶¶ 29, 30, 55. Accordingly, Antimo's unjust enrichment claim should be dismissed.

**C.    The Constructive Trust Claim Should Be Dismissed because it Is Not an Independent Cause of Action**

Antimo's constructive trust claim should be dismissed because it is an equitable remedy, not a standalone cause of action. *See Nelson v. Nelson*, 288 Kan. 570, 578-79, 205 P.3d 715 (2009).

**D.    Plaintiff's Constructive Fraud and Non-Fraud Claims Should Be Dismissed because they Are Based on Alleged Misrepresentations and/or Concealment**

Antimo's constructive fraud, breach of fiduciary duty, and unjust enrichment claims incorporate the fraud counts and then specifically allege that they are based on the same alleged false representations and concealments. Compl., ¶¶ 93-94, 102, 106. Accordingly, these claims fail for the same reasons as the fraud claims discussed above.[13]

**V.    CONCLUSION**

Antimo's claims should be dismissed with prejudice in their entirety because Antimo fails to state them with sufficient particularity as required by Rule 9(b) and/or fails to state a claim upon which relief can be granted, and for such further relief as the Court deems just and proper.

---

[13] *Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533-JWL, 2010 WL 3735757, at *6 (D. Kan. Sept. 20, 2010) (Rule 9(b) applies to fraud-based fiduciary duty claims).

BAKER STERCHI COWDEN & RICE LLC

/s/ Dylan L. Murray

| James Scott Kreamer | KS #14374 |
| Dylan L. Murray | KS #25417 |

2400 Pershing Road
Suite 500
Kansas City, Missouri  64108
Tel:  816/471-2121
Fax:  816/472-0288
kreamer@bakersterchi.com
dmurray@bakersterchi.com

ATTORNEYS FOR DEFENDANT BRENDAN REICH

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the counsel of record identified below.

Blake A. Shuart
J. Darin Hayes
Kaylea Knappenberger McGrath
HUTTON & HUTTON
8100 E. 22nd St. N., Bldg. 1200
Wichita, Kansas 67226
Phone: (316) 688-1166
Fax: (316) 686-1077
Blake.Shuart@huttonlaw.com
ATTORNEYS FOR PLAINTIFF

/s/ Dylan L. Murray