## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANTIMO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 25-1071-KHV |
| | ) | |
| BRENDAN REICH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On March 14, 2025, in the District Court of Sedgwick County, Kansas, plaintiff filed suit against its former employee, Brendan Reich.  On April 21, 2025, defendant removed the case to federal court based on diversity jurisdiction.  See Notice Of Removal (Doc. #1).  Under Kansas law, plaintiff asserts claims for fraud, fraud by silence, constructive fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation and constructive trust.  See First Amended Complaint (Doc. #12) filed June 2, 2025. This matter comes before the Court on Defendant Brendan Reich's Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #16) filed June 16, 2025.   For reasons stated below, the Court sustains in part and overrules in part defendant's motion to dismiss.

## Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.  Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

## **Factual Background**

Plaintiff's first amended complaint alleges as follows:

Plaintiff—a Kansas limited liability company—is a global trading company focused on commodity markets in the United States, Europe and Asia.  Between December of 2020 and July of 2024, defendant—a resident of Connecticut—worked remotely for plaintiff as a Senior Trader in the ethanol market.

I.      **The Ethanol Trading Market**

In the ethanol market, Renewable Identification Numbers ("RINs") are credits which are used to track production, use and trading of renewable fuels as they move through the supply chain. Each RIN is a 38-digit alphanumeric code representing a batch code for every gallon of fuel generated or imported to the United States.    Each gallon is assigned a unique RIN.   As the renewable fuel is physically blended into conventional fuel, the corresponding RIN is separated and can be independently traded, allowing obligated parties to buy or sell RINs to meet their Renewable Fuel Standard obligations.[1]

As a trader in the ethanol market, defendant managed RIN credits, which account for a portion of the value of ethanol.  With each purchase and sale, RIN credits from plaintiff's RIN bank transferred concurrently with any physical ethanol transfer.[2]  Plaintiff's general business practice was to maintain a balance of RINs which exceeded the physical amount of ethanol (a renewable fuel) which it held.  Therefore, plaintiff would not sell RINs unless it was carrying an excess of RINs compared to gallons of ethanol which it held.  Other than at Bluewing Terminal in Cameron County, Texas, plaintiff would not buy or sell individual RINs.

Plaintiff employed accountants to maintain internal files which included monthly journal entries to account for ethanol and RIN balances.  Accountants "booked" the physical ethanol and

---

[1]      Obligated parties are fuel producers or importers who are required to blend a certain amount of renewable fuels into products each year and retire RINs to demonstrate compliance with the Renewable Fuel Standard program.  The Renewable Fuel Standard program is a regulatory program which the United States Environmental Protection Agency established in 2007, with the goal of promoting renewable fuels and reducing greenhouse gas emissions from the transportation sector.

[2]      A seller can also sell ethanol without a RIN, so the seller keeps the RIN and subtracts its value from the price of the ethanol.  Most of defendant's transactions included RINs.

-3-

RIN inventory as follows:

*Physical Ethanol Value = (Physical Ethanol Gallons) x (Market Price)*[3]

*RIN Value = (Total RIN Credits – Physical Ethanol Gallons) x (RIN Market Price)*

The RIN value formula can result in a positive or negative (short) RIN value because if the bank contained no commensurate RIN credit, plaintiff would book a short-RIN value for the ethanol.

## II.    Defendant's Incentive Bonus

In March of 2024, defendant was to receive an incentive bonus based on his trading gains over the prior three years—2021, 2022 and 2023.  By December of 2023, defendant knew that he had incurred major trading losses for that year, which would reduce his bonus by an exorbitant sum under his employment agreement.  Therefore, in the final weeks of December, defendant developed and implemented a scheme to (1) sell individual RINs in mass before the end of the calendar year and (2) repurchase the RINs in early 2024 when the purchase would not impact his bonus.  Defendant relied on plaintiff's accountant, L.K.,[4] to change the accounting methods for RIN valuations by booking any cash that he received from RIN sales as a gain on his profit and loss statement.

On or before December 19, 2023, defendant spoke with L.K. about his scheme, directing her to alter the accounting formula.  At 11:26 AM on December 19, 2023, he messaged L.K. by plaintiff's intra-office messaging system, asking her to "give [her] pov [point-of-view] on RINs position."  Amended Complaint (Doc. #12), ¶ 34.  L.K. responded that she would "send over in a little bit."  Id., ¶ 35.  At 3:56 PM, defendant messaged L.K. again and asked, "are we set up to

---

[3]        The market price includes the RIN value.

[4]        Plaintiff does not allege the accountant's full name, but refers to her only as "L.K."

trade with exxon?"  Id., ¶ 36.  L.K. responded, "yes."  Id.

On December 20, 2023, defendant executed the first RIN transaction, selling six million RINs to ExxonMobil Oil Corporation for $4,890,000.  On December 21 and 22, 2023, he sold another five million RINs to Vitol, Inc. for $4,062,000.  On December 26, 2023, defendant sold three million RINs to Raizen North America Inc. for $2,340,000.  Over the course of six days, defendant sold 14 million RINs for a total sum of $11,292,000.  Defendant's transactions left plaintiff with a short position of 13,372,050 RINs, contrary to its standard business practices.  Defendant did not discuss the transactions with plaintiff's management, and management did not approve the transactions.[5]

Instead of calculating the RIN value as stated above, L.K. used the following calculation to book RIN inventory: *RIN Value = (Total RIN Credits) x (RIN Market Price)*.  This calculation did not recognize defendant's obligation to maintain RIN credits which supported plaintiff's ethanol balance.  Plaintiff's short position of 13,372,050 RINs, coupled with L.K.'s RIN inventory valuation change, artificially inflated defendant's profit and loss statement by $11,965,269.  Defendant's reported losses were $7,375,520.  His actual losses were $19,340,789.

In March of 2024, plaintiff paid defendant $4,424,765 as an incentive bonus under his employment agreement.  Had defendant reported his actual losses, his bonus would have been $2,629,976.65.  Accordingly, defendant's scheme led to a bonus overpayment of $1,794,788.35.

In early 2024, defendant executed the final stage of his plan: to buy back RINs so that the number of RINs which plaintiff held equaled the number of gallons of ethanol held.  Between January 4 and March 7, 2024, defendant purchased 13 million RINs for $10,040,000 across four

---

[5]    Plaintiff does not allege whether defendant typically needed approval for these types of transactions.

separate dates and three separate customers.  Defendant began 2024 with large trading losses to equalize his books, and those losses would have affected another eventual bonus.  Therefore, in July of 2024, defendant left his job with plaintiff to work at a new trading company (Atlas Oil Company).[6]  Within two weeks of his departure, he recruited L.K. to join him.

## III.    Defendant's Statements About The Transactions

During the weekend of September 28, 2024, plaintiff's controller Jen Bahl discovered defendant's purchases of 13 million RINs between January 4 and March 7, 2024.   On September 30, 2024, Bahl and defendant had the following email exchange:[7]

> **Bahl**: "Over the weekend as I was putting together our RIN reconciliation – I noticed that we bought 13MM RINS for ~ $10MM in RINS in March 2024. When/how were those RINS initially sold (or how was our RIN balance so low that we needed to buy)?"  Id., ¶ 63.

> **Defendant**: "RINs were [bought] partially on a spec basis[8], but were to cover an e23/24 RIN roll. As we had the large Chicago inventory we needed to roll the RINs to e24 to attach to the physical sales in 2024."  Id., ¶ 64.

> **Bahl**: "Understood why we would need a large roll to e24, however I am not able to find the sale side of the roll anywhere. $10MM is how much cash went out the door in March '24 for 13MM RINS, so we would have had roughly as much coming in, at some point. Do you recall when we sold and to whom?"  Id., ¶ 65.

> **Defendant**: "Yes because we had roughly 250 kb of inventory in Chicago. So that's approximately 10.5 mg of inventory for 2024 delivery."  Id., ¶ 66.

> **Bahl**: "Thank you! I'm trying to wrap my head around this, I would think if we

---

[6]      Plaintiff does not allege the exact date when defendant left his employment with plaintiff.

[7]      Bahl and defendant included L.K. on their emails, but plaintiff does not allege that L.K. ever responded.

[8]      "Spec" trading is a form of trading in which traders look to profit from short-term market price movements on a high risk/high reward basis.  Plaintiff's physical ethanol business generally did not include spec trading of individual RINs.  Moreover, defendant's growth plan did not include spec trading within the scope of his proposed trading activities.

sold $11MM worth of RINS in Dec23, we would see inventory value drop by roughly $11MM (give or take market variances ofc). However, when I pull our RIN inventory, we don't have $11MM worth of RINS to sell and inventory value doesn't really change much Dec to Jan. What am I missing? Thank you in advance." Id., ¶ 67.

The next day, October 1, 2024, Bahl and defendant exchanged the following emails:

**Bahl**: "Following up on this email. Can you explain why our RIN inventory was booked around 2MM RINS in both Nov & Dec but we sold 14MM RINS to roll out of E23? I would expect to see roughly 14MM RINS EOM Nov and closer to 0 EOM Dec." Id., ¶ 68.

**Defendant**: "I think the 2 mg of inventory is related to physical ethanol inventory. I think we had closer to 10-14mg of e23 inventory that we were accruing from Jun-Dec via our rinless domestic sales (2-2.5mg/mo) so that was the liquidation/close out." Id., ¶ 69.

The statements in defendant's last email to Bahl were false. Plaintiff's year-end records for 2023 confirm that plaintiff had 15.4 million gallons of physical ethanol which required RINs to "cover," and that plaintiff had only 2,067,006 RINs after defendant's transactions in December of 2023—leaving plaintiff with a short position of 13,372,050 RINs.

On March 14, 2025, plaintiff filed suit against defendant. Under Kansas law, plaintiff brings seven claims against defendant: fraud, fraud by silence, constructive fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation and constructive trust.[9] See id. Specifically, plaintiff alleges that during defendant's employment, he completed unusual, unapproved, improper and unprecedented RIN sale transactions contrary to plaintiff's best interests, while directing an accountant to utilize unapproved and incorrect methods of booking RIN inventory. Defendant knew that plaintiff calculated his incentive bonus based on incorrect figures and failed to notify plaintiff of the inaccurate figures, resulting in defendant receiving

---

[9]    Plaintiff styles its negligent misrepresentation claim as an "alternative pleading." Id. at 18.

$1,794,788.35 in overpaid bonuses.

On June 16, 2025, defendant filed his motion to dismiss.  See Defendant's Motion To Dismiss (Doc. #16).

## Analysis

Under Rule 12(b)(6), defendant seeks to dismiss plaintiff's amended complaint in its entirety.  First, defendant argues that plaintiff fails to state a claim for fraud, fraud by silence, constructive fraud, breach of fiduciary duty, unjust enrichment and negligent misrepresentation because it has not alleged that (1) defendant made a false statement of material fact, (2) defendant concealed a material fact, (3) plaintiff relied on defendant's false statement or concealed material fact and (4) defendant's RIN transactions caused plaintiff damage.  Second, defendant argues that because an enforceable contract governs the parties' relationship, plaintiff fails to state a claim for unjust enrichment.  Third, defendant argues that because a constructive trust is an equitable remedy and not an independent cause of action, plaintiff fails to state a claim for a constructive trust.

As for defendant's first argument, he generally references plaintiff's "fraud-based claims," but does not separate and parse out the elements for each of those six claims.  Instead, defendant argues that if plaintiff's fraud and fraud by silence claims fail, the other fraud claims also fail because they are based on the same alleged misrepresentations and concealments.  Accordingly, the Court only considers defendant's arguments as they pertain to plaintiff's claims of fraud and fraud by silence.

## I.    Fraud

As noted, plaintiff alleges that during defendant's employment, he completed unusual, unapproved, improper and unprecedented RIN sale transactions contrary to plaintiff's best interests, while directing an accountant to utilize unapproved and incorrect methods of booking

RIN inventory.  Plaintiff further alleges that months later, to conceal his fraudulent acts, defendant made false email assertions about the purpose of the transactions.  Defendant argues that plaintiff has not alleged that (1) he made false representations of material fact, (2) plaintiff relied and acted upon his representations and (3) his representations cased plaintiff's loss.  Moreover, defendant argues that plaintiff fails to plead fraud with particularity.

Under Kansas law, to state a claim for fraud, plaintiff must allege that "(1) [t]he defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations."  Stechschulte v. Jennings, 297 Kan. 2, 19, 298 P.3d 1083, 1096 (2013).

Rule 9(b), Fed. R. Civ. P., requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To survive a motion to dismiss, plaintiff must describe the circumstances of the fraud, i.e. the time, place and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation.  Kestrel Holdings I, LLC v. Learjet Inc., 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004).

A.    Whether Plaintiff Has Alleged A False Statement Of Material Fact

Plaintiff alleges that defendant made three categories of false representations: (1) the RIN transactions in December of 2022, (2) the accounting records documenting those transactions and (3) his email to Bahl about the purpose of the transactions.

"To constitute actionable fraud the representation must relate to past or present fact, as

opposed to mere opinions or puffing or promised actions in the future." Timi v. Prescott State Bank, 220 Kan. 377, 389, 553 P.2d 315, 325 (1976). "A representation is material when it relates to some matter that is so substantial as to influence the party to whom it is made." Stechschulte, 297 Kan. at 19–20, 298 P.3d at 1096.

Defendant urges the Court to view each category in isolation, and argues that if it does so, plaintiff fails to allege a false statement of material fact. Defendant, however, misstates the Court's obligation on a motion to dismiss. The Court considers plaintiff's allegations "taken as a whole," and specifically, in considering whether plaintiff has alleged fraud with particularity, it asks "whether the complaint, taken as a whole, sufficiently apprises the defendant of its involvement in the alleged fraudulent conduct." Clinton v. Sec. Benefit Life Ins. Co., 63 F.4th 1264, 1280 (10th Cir. 2023) (brackets and quotations omitted).

Reviewing plaintiff's complaint as a whole, plaintiff has alleged that (1) defendant's RIN transactions in December of 2023 contradicted its general business practices; (2) defendant completed the transactions without any discussion, approval or communication with plaintiff's management;[10] (3) plaintiff's general business practice was to book RIN as follows: *RIN Value = (Total RIN Credits – Physical Ethanol Gallons) x (RIN Market Price)*; (4) for defendant's trades dated December 20, 21, 22 and 26, 2023, defendant directed L.K. to use the following calculation: *RIN Value = (Total RIN Credits) x (RIN Market Price)*; (5) this calculation did not recognize plaintiff's obligation to maintain RIN credits which supported its physical ethanol balance; (6) on September 30, 2024, Bahl (plaintiff's controller) emailed defendant, asking why plaintiff had purchased a total of 13 million RINs in early 2024; (7) on October 1, 2025, by email, Bahl asked

---

[10]    As noted, however, plaintiff does not allege whether defendant typically needed approval for certain transactions.

defendant and L.K., "Can you explain why our RIN inventory was booked around 2MM RINS in both Nov & Dec but we sold 14MM RINS to roll out of E23? I would expect to see roughly 14MM RINS EOM Nov and closer to 0 EOM Dec," id., ¶ 68; (8) defendant responded, "I think the 2 mg of inventory is related to physical ethanol inventory. I think we had closer to 10-14mg of e23 inventory that we were accruing from Jun-Dec via our rinless domestic sales (2-2.5mg/mo) so that was the liquidation/close out," id., ¶ 69; and (9) defendant's statement in response is false because plaintiff's year-end records for 2023 confirmed that it had 15.4 million gallons of physical ethanol for which it needed RINs to "cover," and that it had only 2,067,006 RINs after defendant's transactions in December of 2023—leaving it with a short position of 13,372,050 RINs.

Defendant argues that because L.K. created the false accounting records, he is not liable for the alleged false statements.[11]  Under well-established agency law, however, defendant may be vicariously liable for L.K.'s tortious conduct if he expressly or implicitly authorized her conduct. Cole v. Am. Family Mutual Ins. Co., 333 F. Supp. 2d 1038 (D. Kan. 2004).  To allege vicarious liability, plaintiff must allege that (1) defendant and L.K. had an agency relationship and (2) L.K. acted within the scope of her authority in creating the accounting records.  See Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank, 255 F. Supp. 3d 1150, 1159 (D. Kan. 2017).  When plaintiff's

---

[11]    In addition, defendant argues that (1) L.K.'s use of a "non-customary accounting formula" cannot be the basis for a fraud claim and (2) even if his email to Bahl was false, it was a statement of opinion—not fact—and is therefore not actionable.  As to the former, use of a "non-customary accounting formula" falls well within the spectrum of potential fraud claims.  Moreover, defendant cites no law to support this argument.

As to the latter, the Court need not delve into blurred lines of factual versus opinion statements because the emails are only relevant to evidence defendant's prior fraudulent acts. Plaintiff Antimo, LLC's Response Brief In Opposition Of Defendant Reich's Motion To Dismiss (Doc. #18) filed July 2, 2025 at 12.  Plaintiff does not present the emails as a separate basis for its fraud claims, so the Court disregards this argument.

allegations of fraud implicate an agency relationship, courts have required plaintiff to also plead agency with particularity.  See Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777, 783 (7th Cir. 1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."); see also Abels v. Farmers Commodities Corp., 259 F.3d 910, 916 (8th Cir. 2001) ("[A] plaintiff seeking to hold a principal liable for an agent's fraud must plead not only fraud but also agency with particularity.").

Under Kansas law, a principal-agent relationship exists when (1) the principal and agent each manifest assent that (2) the agent shall act on the principal's behalf and (3) subject to the principal's control.  Golden Rule Ins. Co. v. Tomlinson, 300 Kan. 944, 955, 335 P.3d 1178, 1188 (2014).  The parties may manifest their assent to create an agency relationship "through written or spoken words or other conduct."  Rezac Livestock Comm'n, 255 F. Supp. 3d at 1160 (quoting Restatement (Third) of Agency § 1.03). A principal's manifestation may be "informal, implicit, and nonspecific."  Id. (quoting Restatement (Third) of Agency § 1.01 cmt. d).  An agent need not manifest assent to the principal; an agent may manifest assent by "perform[ing] the service requested by the principal following the principal's manifestation."  Id.

Here, plaintiff has easily alleged that L.K. acted as defendant's agent when creating false accounting records.  Plaintiff alleges that on or before December 19, 2023, defendant and L.K. had a conversation in which defendant directed L.K. to change the accounting formula for his upcoming transactions.  On December 19, 2023, defendant messaged L.K. to "give [her] pov [point-of-view] on RINs position."  Amended Complaint (Doc. #12), ¶ 34.  Plaintiff claims that this question "would make no logical sense if not preceded by a conversation" and that it was

"clearly a follow-up on his efforts to get her to change the accounting of RINs." Id., ¶ 35. For defendant's trades dated December 20, 21, 22 and 26, 2023, L.K. then used the following calculation: *RIN Value = (Total RIN Credits) x (RIN Market Price)*, which did not recognize plaintiff's obligation to maintain RIN credits which supported its physical ethanol balance.

Taking as true the allegations in plaintiff's complaint and making all reasonable inferences in plaintiff's favor, plaintiff has alleged that (1) defendant created the agency relationship by directing L.K. to change the formula; (2) L.K. assented to the agency relationship by changing the formula; (3) L.K.'s conduct was to benefit defendant by raising his profit numbers, increasing his anticipated bonus; and (4) L.K. accepted defendant's instructions during the scheme. Therefore, plaintiff has alleged that defendant is liable for L.K.'s conduct.

Plaintiff has plausibly alleged that defendant made—or is vicariously liable for—false statements of material fact as part of a scheme to artificially inflate his profits in 2023.

B.    Whether Plaintiff Has Alleged Justifiable Reliance And Causation

As noted, to state a claim for fraud, plaintiff must also allege that it reasonably relied on defendant's representations, acted upon the representations and sustained damages by relying upon the representations. Stechschulte, 297 Kan. at 19, 298 P.3d at 1096. "It is a familiar rule in Kansas courts that a plaintiff must show his or her reliance on the disputed communications and resulting detriment in order to establish fraud by omission or commission." Nichols v. Kansas Political Action Committee, 270 Kan. 37, 53, 11 P.3d 1134, 1146 (2000). Plaintiff's reliance must be "reasonable, justifiable and detrimental." Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp., 45 F. Supp. 2d 1164, 1198 (D. Kan. 1999). "A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable." Goff v. Am. Savs. Ass'n., 1 Kan. App. 2d 75, 79,

561 P.2d 897, 901 (1977).

Defendant argues that plaintiff could not have relied on his representations because L.K. had full knowledge of the inaccurate accounting records and her knowledge is imputed to plaintiff. Under Kansas law, "[a] principal is charged with the knowledge of an agent *acting within the scope of [her] authority* even though the knowledge is not communicated to the principal." Conner v. Koch Oil Co., a Div. of Koch Indus., 245 Kan. 250, 254, 777 P.2d 821, 824 (1989) (emphasis added). Plaintiff argues that L.K.'s accounting changes were not within the scope of her authority. The Court agrees. Plaintiff has alleged that its accountants had a customary formula for booking RIN inventory and that for defendant's trades in December of 2023, L.K. altered the formula to no longer account for plaintiff's obligation to maintain RIN credits which supported its physical ethanol balance. Plaintiff has plausibly alleged that L.K. acted outside the scope of her authority in altering the accounting formula. Therefore, her knowledge is not imputed to plaintiff.

In a footnote in his motion, defendant also argues that plaintiff had independent knowledge of the records because under 40 C.F.R. § 80.1451, an unnamed corporate officer had an obligation to review and certify the accuracy of its RIN records to the United States Environmental Protection Agency on or before March 31, 2024. Plaintiff responds that (1) defendant attempts to step outside the four corners of the complaint by presenting his own factual allegations in a footnote and (2) while plaintiff does have this reporting requirement, it is common practice to designate an outside agent to submit the required reports, and L.K. signed the form designating the outside agent. In reply, defendant asks the Court to take judicial notice of the federal regulation.

This dispute is a red herring. The Court will not convert this motion into one for summary judgment by considering facts outside of the pleadings, and it will not consider defendant's request for judicial notice, which he raises for the first time in his reply. See Alexander v. Okla., 382 F.3d

1206, 1214 (10th Cir. 2004) (when party presents matters outside of the pleadings for consideration, court must either exclude material or treat motion as one for summary judgment); United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011) (court does not consider issues raised for first time in reply).

Plaintiff has plausibly alleged that its reliance was reasonable, justifiable and detrimental. Plaintiff has alleged that defendant and L.K. implemented a scheme to artificially inflate his profits for 2023 to receive a larger incentive bonus. To accomplish this, defendant conducted a series of transactions which contradicted plaintiff's general business practices and directed L.K. to alter the accounting formula when booking those transactions. In reliance on the accounting records, in March of 2024, plaintiff paid defendant $4,424,765 for an incentive bonus. Plaintiff has also plausibly alleged causation. Plaintiff alleges that had the records been accurate, defendant's bonus would have been $2,629,976.65. Accordingly, plaintiff overpaid defendant $1,794,788.35.

C.    Whether Plaintiff Has Alleged Fraud With Particularity

Defendant argues that even if plaintiff states a claim for fraud, it failed to plead the claim with particularity. As noted, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To plead fraud with particularity, plaintiff must describe the circumstances of the fraud, i.e. the time, place and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation. Kestrel Holdings, 316 F. Supp. 2d at 1078. In considering whether plaintiff has alleged fraud with particularity, the Court asks "whether the complaint, taken as a whole, sufficiently apprises the defendant of its involvement in the alleged fraudulent conduct." Clinton, 63 F.4th at 1280 (brackets and quotations omitted).

Here, plaintiff has satisfied the particularity requirement. Plaintiff has alleged the date and

content of (1) defendant's conversation with L.K., (2) the RIN transactions and (3) his emails to Bahl. Plaintiff has alleged the actions of defendant and L.K. and their respective roles in defendant's scheme. Lastly, plaintiff has alleged the harm which it suffered in reliance on the altered financial records. Taken as a whole, plaintiff's complaint sufficiently apprises defendant of his involvement.

The Court overrules defendant's motion to dismiss plaintiff's fraud claim.

## II.    Fraud By Silence

Plaintiff alleges that defendant failed to inform it that (1) he had undertaken unusual, unapproved, improper and unprecedented RIN sale transactions, (2) L.K. had booked the RIN inventory with an incorrect accounting formula and (3) his losses had been underreported, making his 2023 profit and loss figures inaccurate. As a result of the inaccurate figures, plaintiff alleges that it overpaid defendant his incentive bonus. As noted, defendant argues that plaintiff has not alleged that (1) he concealed a material fact, (2) plaintiff relied on defendant to communicate material facts to it and (3) his failure caused plaintiff's loss. Defendant further argues that even if plaintiff states a claim for fraud by silence, it fails to do so with particularity.

Under Kansas law, to state a claim for fraud by silence, plaintiff must allege that "(1) [t]he defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff." Stechschulte, 297 Kan. at 21, 298 P.3d at 1097.

-16-

A.    <u>Whether Plaintiff Has Alleged That Defendant Concealed A Material Fact</u>

Under Kansas law, a necessary element of fraud by silence is that defendant had an obligation to communicate material facts to plaintiff.  <u>Zhu v. Countrywide Realty, Co.</u>, 165 F. Supp. 2d 1181, 1202 (D. Kan. 2001).  A duty to disclose arises in two situations: (1) a contracting party who has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain; and (2) parties in a fiduciary relationship must disclose material information to one another.  <u>Id.</u>  Plaintiff does not allege that defendant was a contracting party with superior knowledge material to a bargain— although the Court infers that with respect to his employment agreement, he was.  The Court therefore focuses on the latter.

A fiduciary relationship exists when "one party is in a position of peculiar confidence that allows the person to have and exercise influence over another."  <u>Stroud v. Ozark Nat'l Life Ins. Co.</u>, 320 Kan. 180, 191, 564 P.3d 725, 733 (2025).  Kansas recognizes two types of fiduciary relationships: "(1) those specifically created by contract such as principal and agent . . . and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions."  <u>Denison State Bank v. Madeira</u>, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982).[12]  Plaintiff invokes the second form of fiduciary relationships.

In determining whether the second form of fiduciary relationship exists, the Court considers whether (1) defendant has a duty to act primarily for the benefit of plaintiff; (2) defendant

---

[12]    Defendant's employment agreement presumably created a principal-agent relationship, but plaintiff has not alleged the terms of the agreement or provided a copy of the agreement to the Court.

has and exercises influence over plaintiff; (3) defendant has a position of superiority over plaintiff; and (4) plaintiff placed its property, interest or authority in the charge of defendant.  See id. at 692, 640 P.2d at 1241.  These general considerations need not be present in every case in which plaintiff alleges a fiduciary relationship.  Rajala v. Allied Corp., 919 F.2d 610, 614 (10th Cir. 1990).  Even so, "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law." Id. at 615.  The Court should not construe an ordinary business relationship as a fiduciary relationship, absent clear intent by the parties.  Terra Venture, Inc. v. JDN Real Est. Overland Park, L.P., 443 F.3d 1240, 1245 (10th Cir. 2006).

Here, plaintiff alleges that as a Senior Trader, plaintiff entrusted defendant with responsibility over millions of dollars in physical ethanol transactions.  Specifically, plaintiff entrusted defendant to make large-scale trades of plaintiff's ethanol assets on its behalf, which impacted plaintiff's business operations and revenue.  Plaintiff alleges that through defendant's employment, he accepted, assumed and was aware of the trust and confidence which plaintiff afforded him to conduct the trades.  Plaintiff alleges that defendant was in a position of superior knowledge and access to information concerning the nature of his ethanol transactions.  Taking as true the facts in plaintiff's complaint, plaintiff has plausibly alleged that it was in a fiduciary relationship with defendant, such that defendant owed a duty to plaintiff to disclose material information.

Plaintiff alleges that defendant failed to communicate that (1) he had undertaken unusual, unapproved, improper and unprecedented RIN sale transactions; (2) L.K. had booked the RIN inventory with an incorrect accounting formula; and (3) his losses had been underreported, making his 2023 profit and loss figures inaccurate.  The Court agrees.  Plaintiff has plausibly alleged that

defendant knew of these material facts, had a duty to disclose them and failed to do so.  On this ground, the Court overrules defendant's motion to dismiss.

      B.    <u>Whether Plaintiff Has Alleged Justifiable Reliance And Causation</u>

For fraud by silence claims, plaintiff must also allege that it justifiably relied on defendant to communicate material facts, and that it sustained damages because of defendant's failure to communicate.  <u>Stechschulte</u>, 297 Kan. at 19, 21, 298 P.3d at 1096.  As noted, plaintiff must allege that it relied to its detriment on defendant's omission.  <u>Nichols</u>, 270 Kan. at 53, 11 P.3d at 1146. Plaintiff's reliance must be "reasonable, justifiable and detrimental."  <u>Wichita Clinic, P.A.</u>, 45 F. Supp. 2d at 1198.

Defendant argues that the Court should dismiss plaintiff's fraud by silence claim for the same reason as its fraud claim: plaintiff could not have relied on the alleged concealment because (1) L.K.'s knowledge is imputed to plaintiff and (2) under 40 C.F.R. § 80.1451, an unnamed corporate officer had an obligation to review and certify the accuracy of its RIN records.  For the same reasons set forth above, the Court overrules or disregards both arguments.

Plaintiff has plausibly alleged that its reliance was reasonable, justifiable and detrimental. Plaintiff has alleged that defendant had a duty to disclose material information to plaintiff, and he failed to communicate that L.K. had booked the RIN inventory with an incorrect accounting formula and that his losses had been underreported, making his 2023 profit and loss figures inaccurate.  In reliance on the accounting records, in March of 2024, plaintiff paid defendant $4,424,765 for his incentive bonus.  Plaintiff has also plausibly alleged causation.  Plaintiff alleges that had the records been accurate, defendant's bonus would have been $2,629,976.65, so plaintiff overpaid defendant $1,794,788.35.

C.    <u>Whether Plaintiff Has Alleged Fraud By Silence With Particularity</u>

As noted, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To plead fraud with particularity, plaintiff must describe the circumstances of the fraud, <u>i.e.</u> the time, place and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation.  <u>Kestrel Holdings</u>, 316 F. Supp. 2d at 1078. Logically, for fraud by silence claims, plaintiff cannot plead the time, place and content of a false representation.  Therefore, to allege fraud based on silence, plaintiff must allege "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed."  <u>Dean v. Wright Med. Tech., Inc.</u>, 593 F. Supp. 3d 1086, 1098 (D. Colo. 2022) (quoting <u>Martinez v. Nash Finch Co.</u>, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012)); <u>see also</u> <u>Doll v. Ford Motor Co.</u>, 814 F. Supp. 2d 526, 538 (D. Md. 2011) ("Rule 9(b)'s particularity requirements are relaxed" for fraudulent concealment claims because "omissions cannot be described in terms of the time, place, and contents of the misrepresentation").

Here, plaintiff has alleged that defendant (1) failed to disclose to plaintiff that L.K. had booked the RIN inventory with an incorrect accounting formula and that his losses had been underreported, making his 2023 profit and loss figures inaccurate; (2) had a duty to disclose the information due to his fiduciary relationship with plaintiff; and (3) knew of this information as early as December 19, 2023 and should have disclosed it once he knew the records were inaccurate. Plaintiff also alleges that the purpose behind the omissions was to artificially inflate his profit and loss figures for 2023 thereby increasing his incentive bonus for 2024.  These allegations state with particularity a claim for fraud by silence.

The Court overrules defendant's motion to dismiss plaintiff's fraud by silence claim.

**III.    Constructive Fraud, Breach Of Fiduciary Duty And Negligent Misrepresentation**

Plaintiff also asserts claims for constructive fraud, breach of fiduciary duty and negligent misrepresentation.  As to plaintiff's constructive fraud and breach of fiduciary duty claims, it alleges that (1) defendant maintained a fiduciary and confidential relationship with plaintiff; (2) during this relationship, defendant made fraudulent ethanol transactions, directed the creation of false records, failed to notify plaintiff of the false records and made false statements to plaintiff regarding the purpose of the transactions to prevent it from uncovering his scheme; and (3) as a result of defendant's conduct, plaintiff overpaid him by $1,794,788.35.  As to plaintiff's negligent misrepresentation claim, it alleges that defendant failed to exercise reasonable care in communicating false information to plaintiff regarding his profit and loss statement for 2023, and as a result, plaintiff suffered a loss of $1,794,788.35.

Defendant argues that the Court should dismiss plaintiff's claims for constructive fraud, breach of fiduciary duty and negligent misrepresentation.  As noted, specifically, defendant argues that plaintiff has not alleged that (1) he concealed a material fact, (2) plaintiff relied on defendant to communicate material facts to it and (3) his failure caused plaintiff's loss.[13]  Defendant does not identify or challenge the elements for each claim.

As for plaintiff's constructive fraud claim under Kansas law, constructive fraud is "a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty or purpose

---

[13]    Defendant also raises these arguments for plaintiff's unjust enrichment claim. Because the Court resolves that claim on alternate grounds, it does not include it in this section.

or intent to deceive is necessary." <u>Nelson v. Nelson</u>, 288 Kan. 570, 583, 205 P.3d 715, 726 (2009). Plaintiff must allege "(1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship." <u>Id.</u>

As for plaintiff's breach of fiduciary duty claim under Kansas law, to state a claim for breach of fiduciary duty, plaintiff must allege "(1) the existence of a duty arising from a fiduciary relationship; (2) a breach of duty; and (3) an injury resulting proximately from the breach." <u>Stroud</u>, 320 Kan. at 187, 564 P.3d at 731–32.

As for plaintiff's negligent misrepresentation claim under Kansas law, "[o]ne who, in the course of any transaction in which he or she has a pecuniary interest, supplies false information for the guidance of another person is liable for damages suffered by such other person caused by reasonable reliance upon the false information if: (1) the person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; (2) the person who relies upon the information is the person for whose benefit and guidance the information is supplied; and (3) the damages are suffered in a transaction that the person supplying the information intends to influence." <u>Stechschulte</u>, 297 Kan. at 22, 298 P.3d at 1097–98.

For reasons identical to those set forth above, the Court overrules defendant's motion to dismiss plaintiff's constructive fraud, breach of fiduciary duty and negligent misrepresentation claims.

## IV.     Unjust Enrichment

Plaintiff alleges that it overpaid defendant $1,794,788.35 in bonuses and that to date, defendant has retained the overpayment.  Defendant argues that because an enforceable contract governs the parties' relationship, plaintiff fails to state a claim for unjust enrichment.

Under Kansas law, plaintiff states a claim for unjust enrichment by alleging that "(1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust." Est. of Draper v. Bank of Am., N.A., 288 Kan. 510, 518, 205 P.3d 698, 706 (2009).   Because unjust enrichment claims are equitable, they generally "are not available theories of recovery when a valid, written contract addressing the issue exists." Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC, 309 F. Supp. 3d 1022, 1037 (D. Kan. 2018) (quoting Ice Corp. v. Hamilton Sundstrand Inc., 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006)).

The parties do not dispute that defendant's employment agreement with plaintiff was a valid, enforceable contract which governed defendant's bonus, and that plaintiff conferred the overpaid bonuses to defendant during the term of that contract.[14]  Given that a valid contract exists, plaintiff cannot assert an unjust enrichment claim.  See Swimwear Sol., 309 F. Supp. 3d at 1039 (dismissing unjust enrichment claim based on enforceable contract governing parties' dispute). The Court therefore sustains defendant's motion to dismiss plaintiff's unjust enrichment claim.

Plaintiff cites Confer v. Milwaukee Elec. Tool Corp., No. 23-CV-2028-KHV, 2023 WL 4420220, at *5 (D. Kan. July 10, 2023), to argue that it can bring an unjust enrichment claim alongside legal claims.   In Confer, the Court held that even though plaintiff could not take both claims to judgment, at the motion to dismiss stage, he could assert claims for unjust enrichment and violations of the Kansas Consumer Protection Act, K.S.A. § 50-623 et seq.  Confer, 2023 WL 4420220, at *5.  In that case, however, no written, enforceable contract governed the parties' relationship.

_____

[14]     Plaintiff does not assert breach of contract, allege the terms of defendant's employment agreement or attach the agreement to its amended complaint.

## V.    Constructive Trust

Plaintiff alleges that because defendant has an equitable duty to convey the $1,794,788.35 in overpaid bonuses to plaintiff, the Court should impose a constructive trust. Defendant argues that constructive trust is an equitable remedy and not an independent cause of action, and that plaintiff fails to state a claim for constructive trust under Kansas law.

Under Kansas law, a constructive trust is not an independent claim but an equitable remedy. Nelson, 288 Kan. at 579, 205 P.3d at 723–24. "[A] constructive trust is an appropriate remedy where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Est. of Draper, 288 Kan. at 518, 205 P.3d at 706 (brackets and quotations omitted). It can arise as a remedy for fraud, constructive fraud, misrepresentation or breach of fiduciary duty. Nelson, 288 Kan. at 585, 205 P.3d at 727; Est. of Draper, 288 Kan. at 519, 205 P.3d at 706–07.

To the extent plaintiff brings a stand-alone claim for a constructive trust, the Court agrees that constructive trust is not a claim upon which relief can be granted. See Nelson, 288 Kan. at 579, 205 P.3d at 723–24. To the extent plaintiff seeks a constructive trust as a remedy for fraud-based claims, the Court overrules defendant's motion to dismiss.

## VI.    Request For Leave To Amend Its Amended Complaint

At the end of plaintiff's response, it requests that if the Court dismisses any claim, it do so without prejudice and allow plaintiff the opportunity to amend its amended complaint. Plaintiff Antimo, LLC's Response Brief In Opposition Of Defendant Reich's Motion To Dismiss (Doc. #18) at 13.

Rule 15(a), Fed. R. Civ. P., allows a party to amend his pleading with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). The Court should freely grant leave when

justice so requires.  Id.  Generally, a party must file a motion to amend before the Court will grant

leave to amend.  Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1185–86 (10th

Cir. 1999).  District of Kansas Local Rule 15.1 requires that plaintiff attach to its motion to amend

the proposed pleading and a redlined version of the proposed amendment.  D. Kan. R. 15.1(a).  If

a party does not file a formal motion to amend its pleading, the Tenth Circuit provides that a request

for leave to amend must still give adequate notice to the district court and to the opposing party of

the basis for the proposed amendment before the Court must recognize that a motion for leave to

amend is before it.  Calderon, 181 F.3d at 1186–87.  A plaintiff's bare request in response to a

motion to dismiss "that leave be given to the Plaintiffs to amend their Complaint" is insufficient.

Id. at 1186 (quoting Glenn v. First Nat'l Bank, 868 F.2d 368, 370 (10th Cir. 1989)).

Here, plaintiff's bare request to remedy any deficiencies in its amended complaint does not

provide adequate notice to the Court or defendant whether any amendment would be appropriate.

As a result, the Court denies plaintiff's request to amend its amended complaint.  Any request must

comply with Local Rule 15.1.

**IT IS THEREFORE ORDERED** that Defendant Brendan Reich's Motion To Dismiss

Plaintiff's First Amended Complaint (Doc. #16) filed June 16, 2025 is **SUSTAINED in part and**

**OVERRULED in part.  The Court dismisses plaintiff's claim for unjust enrichment.**

**Plaintiff's claims for fraud, fraud by silence, constructive fraud, breach of fiduciary duty,**

**negligent misrepresentation and constructive trust remain.**

Dated this 6th day of August, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-25-