**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANTIMO, LLC, )<br>)<br>  Plaintiff/ )<br>  Counterclaim Def., )<br>)<br>v. )<br>)<br>BRENDAN REICH, )<br>)<br>  Defendant/ )<br>  Counterclaim Pltf. )<br>_____ ) | CIVIL ACTION<br><br>No. 25-1071-KHV |

**MEMORANDUM AND ORDER**

On March 14, 2025, in the District Court of Sedgwick County, Kansas, plaintiff Antimo, LLC, filed suit against its former employee, Brendan Reich. On April 21, 2025, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). Under Kansas law, plaintiff asserted claims for fraud, fraud by silence, constructive fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation and constructive trust. See First Amended Complaint (Doc. #12) filed June 2, 2025. On August 6, 2025, on defendant's motion, the Court dismissed plaintiff's claim for unjust enrichment. See Order (Doc. #23). On August 25, 2025, plaintiff filed its Second Amended Complaint (Doc. #30), re-asserting the original claims without unjust enrichment. Defendant asserts several affirmative defenses and a counterclaim, arguing that a prior settlement agreement bars plaintiff's claims. See Answer To Plaintiff's Second Amended Complaint, Affirmative Defenses, And Counterclaim (Doc. #34) filed September 8, 2025.

This matter comes before the Court on Plaintiff/Counterclaim Defendant Antimo, LLC's Motion To Strike Or Dismiss Defendant Reich's Counterclaim For Breach Of Contract (Doc. #42)

filed September 29, 2025 and Defendant Brendan Reich's Motion For Leave To File Surreply In Further Opposition To Plaintiff's Motion To Strike Or Dismiss Counterclaim (Doc. #46) filed November 7, 2025.  For reasons stated below, the Court sustains plaintiff's motion to strike or dismiss and sustains defendant's motion for leave to file a surreply.

## Legal Standard

Plaintiff asserts that the Court should dismiss defendant's counterclaims under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., because the Court lacks subject matter jurisdiction and defendant's counterclaim does not state a claim on which relief can be granted.  Plaintiff also asserts that the Court should strike two of defendant's affirmative defenses under Rule 12(f).

When defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the Court must first decide the jurisdictional challenges because the latter challenge will be moot if the Court lacks jurisdiction.  See Creamer v. Gildemeister, No. 15-4871-KHV, 2015 WL 6828186, at *2 (D. Kan. Nov. 6, 2015).  Dismissal under Rule 12(b)(1) is appropriate when the Court lacks subject matter jurisdiction over a claim for relief.  The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.  Id. (citing Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1189 (10th Cir. 2008)).

Federal courts are courts of limited jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  Therefore, the law imposes a presumption against jurisdiction.  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  The Court may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction, Scheideman v. Shawnee Cnty. Bd. Of Cnty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).   Counterclaim

plaintiff bears the burden of showing that jurisdiction is proper, see Scheideman, 895 F. Supp. at 280, and must demonstrate that the case should not be dismissed, see Jensen v. Johnson Cnty. Youth Baseball League, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Court's standard to dismiss complaints under Rule 12(b)(6) applies equally to counterclaims. Ramada Franchise Sys., Inc. v. Tresprop, Ltd., 188 F.R.D. 610, 612 (D. Kan. 1999).

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a

formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking material from a pleading is a generally disfavored remedy, Nwakpuda v. Falley's, Inc., 14 F.Supp.2d 1213, 1215 (D. Kan. 1998), and the Court should decline to do so unless the allegations (1) have no possible relation to the controversy and (2) may prejudice one of the parties, Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F.Supp.2d 1022, 1029 (D. Kan. 2006). Any doubt as to the utility of the material to be stricken should be resolved against the motion to strike. Nwakpuda, 14 F.Supp.2d at 1215. The purpose of Rule 12(f) is to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial. Stubbs v. McDonald's Corp., 224 F.R.D. 668, 676 (D. Kan. 2004).

**Factual Background**

The Court recited the background facts in its Memorandum And Order (Doc #23) filed August 6, 2025. Additional relevant facts are as follows:

On October 2, 2024, Reich, his current employer ("Atlas") and Antimo entered into a Settlement Agreement and Release ("settlement agreement"). In Section 5 of the settlement agreement, Antimo released and covenanted not to sue Reich for any claims except for fraud, gross

-4-

negligence or willful misconduct from July 6, 2020 through October 2, 2024. In Section 6 of the settlement agreement, upon Atlas's satisfaction of its obligations under the agreement, Antimo released and covenanted not to sue Reich and Atlas for claims in connection with Reich's employment and termination of employment.

On March 14, 2025, Antimo filed the instant lawsuit against Reich. Its Second Amended Complaint (Doc. #30) alleges fraud, fraud by silence, constructive fraud, breach of fiduciary duty, negligent misrepresentation, unjust enrichment and constructive trust. Reich claims that as a result of this lawsuit, he has suffered damages, including attorneys' fees and costs of defense. The full settlement agreement is not a part of the record, but Sections 5 and 6 are set forth below.[1] Section 5 reads as follows:

> 5. **RELEASE OF ATLAS AND REICH**. In consideration of the settlement terms contained in this Agreement, ANTIMO . . . hereby unconditionally and irrevocably remises, releases, forever discharges and covenants not to sue REICH and ATLAS and their related entities . . . from any and all claims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, and any and all demands, obligations and liabilities, of whatever kind or nature, direct or indirect, whether known or unknown or capable of being known, arising in law or in equity, including but not limited to those set forth in the Demand Letter and REICH's Employment Agreement with ANTIMO or which could have been joined or asserted in the Lawsuit from the beginning of time through the date of this Agreement, provided, however, and notwithstanding anything to the contrary herein, ANTIMO shall not release REICH for any act or non-action where such act, omission or error in judgment, occurring from the July 6, 2020 through the date of this Agreement, constitutes, fraud, gross negligence, or willful misconduct.

Section 6 reads as follows:

> 6. **COVENANT NOT TO SUE**. Upon ATLAS'S satisfaction of its obligations under this Agreement, ANTIMO . . . hereby covenants not to sue and fully releases, acquits, and discharges ATLAS and REICH with respect to and from any and all claims, covenants, actions, suits, causes of action, debts, expenses, attorney fees, judgments, and orders of whatever kind or nature in law, equity, or otherwise,

---

[1] The full text of Section 6 is contained in Reich's response to the motion to dismiss, and the full text of Section 5 is contained in Antimo's reply.

whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, and suspected or unsuspected, arising under or in connection with REICH's employment and termination of employment.

## Analysis

Antimo asserts claims for fraud, fraud by silence, constructive fraud, breach of fiduciary duty, negligent misrepresentation and constructive trust. Reich's counterclaim asserts that the settlement agreement bars these claims. Antimo asks the Court to dismiss Reich's counterclaim under Rule 12(b)(1) because the Court lacks subject matter jurisdiction and under Rule 12(b)(6) because Reich fails to state a claim on which relief can be granted.

A court without jurisdiction over the parties cannot render a valid judgment. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, before addressing the merits, the Court must determine whether it has subject matter jurisdiction over defendant's counterclaim. See id.; see also First Magnus Financial Corp. v. Star Equity Funding, LLC, No. 06-2426-JWL, 2007 WL 635312, at *4 (D. Kan. Feb. 27, 2007) (not addressing merits of Rule 12(b)(6) motion because court lacked personal jurisdiction).

### I.     12(b)(1)–Subject-Matter Jurisdiction

Antimo argues that the Court lacks subject matter jurisdiction because Reich does not assert the minimum amount in controversy, $75,000 exclusive of interest and costs, for diversity jurisdiction. 28 U.S.C. § 1332. Reich responds that the Court does not need a separate basis for jurisdiction because his counterclaim is compulsory, so the Court has supplemental jurisdiction and, in any event he has asserted more than $75,000 in controversy.

Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. See Holt v. United States, 46 F.3d 1000, 1002–03 (10th Cir.1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990)). Antimo challenges that on its face, the counterclaim does not allege the required amount in

controversy for diversity jurisdiction. For facial challenges, the Court presumes the accuracy of Reich's factual allegations and does not consider evidence outside the complaint. Id. Reich bears the burden of showing that jurisdiction is proper. See Scheideman, 895 F. Supp. at 280.

### A. Ancillary Jurisdiction

Reich argues that he does not need to show an independent basis for jurisdiction because his counterclaim is compulsory and the Court has jurisdiction ancillary to Antimo's principal claims. Antimo replies that Reich's counterclaim is based on a contract from a separate transaction entered into after Reich's employment and is therefore not compulsory.

The Court may assert jurisdiction over a claim that is ancillary to a principal claim over which it has jurisdiction, even if the Court would not have jurisdiction if the claim were an independent action. Pipeliners Loc. Union No. 798, Tulsa, Okl. v. Ellerd, 503 F.2d 1193, 1198 (10th Cir. 1974). If the counterclaim is compulsory, the Court has jurisdiction derived from the principal claim, but if the counterclaim is permissive, the Court must have independent jurisdictional grounds. Id. A counterclaim is compulsory "if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). Otherwise, the counterclaim is permissive. Fed. R. Civ. P. 13(b); see Smith v. Kansas Pub. Emps. Ret. Sys., No. 18-2340-CM-KGS, 2019 WL 339542, at *1 (D. Kan. Jan. 28, 2019). A counterclaim is compulsory if (1) the issues of fact and law raised by the principal claim and counterclaim are largely the same; (2) res judicata would bar a subsequent suit on the counterclaim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and (4) a logical relationship exists between the claim and the counterclaim. FDIC v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994). The logical relation test is the most controlling. Pipeliners Local Union No. 798, 503 F.2d at 1198 (citing Moore v. N.Y. Cotton Exch., 270 U.S. 593 (1926)).

Here, Antimo alleges that Reich committed various acts of fraud during and after his employment. Reich's counterclaim alleges that Antimo's claims are brought in breach of Section 6's covenant not to sue. The claims are logically related. Both are centered on Reich's employment and the conditions thereof, and Reich's counterclaim alleges that Antimo covenanted not to bring the exact claims which it brings here. See Smith v. Kansas Pub. Emps. Ret. Sys., No. 18-2340-CM-KGS, 2019 WL 339542, at *2 (D. Kan. Jan. 28, 2019). Further, as in Smith, Reich raises the covenant not to sue as an affirmative defense, so as part of the case, the Court must examine the covenant not to sue. Id. In other words, Reich's counterclaim incorporates some of his defenses, contra Adamson v. Dataco Derex, Inc., 178 F.R.D. 562, 564–65 (D. Kan. 1998). Therefore, Antimo's claims and Reich's counterclaim raise largely the same issues of fact and law. Similarly, the same evidence of contract interpretation would support or refute Antimo's claim and Reich's counterclaim. Therefore, factors (1), (3) and (4) support Reich's argument that his counterclaim is compulsory.

Res judicata may or may not support the conclusion that Reich's claim is compulsory. Res judicata (claim preclusion) "precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." King v. Union Oil Co., 117 F.3d 443, 445 (10th Cir. 1997). Here, Antimo's claims and Reich's counterclaim might not be so identical that Reich would be precluded from raising his breach of contract claim in a latter action. Despite this, after considering all four factors, the Court determines that Reich's counterclaim for breach of contract is compulsory due to the strong logical relationship between the claims, as well as the overlapping issues of facts and law.

    B.    <u>Supplemental Jurisdiction</u>

Reich argues that if the Court determines that his counterclaim is permissive, the Court has supplemental jurisdiction over the counterclaim pursuant to 28 U.S.C. §1367.[2] Antimo replies that Reich does not meet the amount in controversy requirement, so the Court should not exercise supplemental jurisdiction.

Under 28 U.S.C. § 1367(a), a federal district court may exercise supplemental jurisdiction over claims which do not fall within its original jurisdiction where those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United Stated Constitution." A claim is part of the same case or controversy if it "derives from a common nucleus of operative fact." Price v. Wolford, 608 F.3d 698, 703 (10th Cir. 2010) (applying common nucleus test to supplemental jurisdiction where original claim based on diversity jurisdiction). As discussed in the previous section, Antimo's claims and Reich's counterclaim significantly overlap on factual and legal issues, since Reich's counterclaim alleges that Antimo agreed not to bring the exact claims which it brings here. Therefore, Antimo's claims and Reich's counterclaim form part of the same case or controversy. See Grogan v. O'Neil, 292 F. Supp. 2d 1282, 1289 (D. Kan. 2003).

Antimo's assertion that Reich does not satisfy the amount in controversy requirement is

---

[2] Reich cites various district courts outside the Tenth Circuit to support his position that a permissive counterclaim could still fall within the court's supplemental jurisdiction. This requires a court to find that a claim and a counterclaim arise out of two different transactions or occurrences but still form the same case or controversy. Some courts find that for supplemental jurisdiction to exist, the claim must be compulsory. See, e.g., Naranjo v. County of Rio Arriba, 862 F.Supp. 328, 334 (D.N.M.1994). The Tenth Circuit has not determined whether supplemental jurisdiction depends on the compulsory/permissive distinction but has adopted the common nucleus of operative fact test for supplemental jurisdiction under Section 1367(a). See Wilhelm v. TLC Lawn Care, Inc., No. CIV.A. 07-2465-KHV, 2008 WL 640733, at *1 n.1 (D. Kan. Mar. 6, 2008). The Court applies the common nucleus test, and notes that its resolution of the motion would not change if it used the compulsory/permissive distinction to determine its subject matter jurisdiction, as discussed previously.

unavailing where the Court exercises supplemental jurisdiction, because Reich does not need an independent jurisdictional basis.  Id.  Since the Court has diversity jurisdiction over Antimo's claims, it has supplemental jurisdiction over Reich's counterclaim.

### C. Diversity Jurisdiction

Antimo argues the Court lacks subject matter jurisdiction because Reich's only alleged damages are attorney's fees and costs in defense of this lawsuit, which do not satisfy the $75,000 amount in controversy requirement.  Reich responds that in good faith, he has sufficiently alleged more than $75,000 in damages.

A federal court has diversity jurisdiction in suits between citizens of different states where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  The parties agree they are citizens of different states.  The amount claimed by the plaintiff or counterclaimant generally controls and it alone can be sufficient to support subject matter jurisdiction. Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1171 (10th Cir. 2011).  When the amount in controversy is challenged, the party asserting jurisdiction has the burden to show that it is not legally certain that the claim is for less than the jurisdictional amount.  Mocek v. City of Albuquerque, 813 F.3d 912, 935 (10th Cir. 2015), citing Woodmen of the World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir.2003).  Here, Reich has sufficiently alleged his damages and established that no legal certainty would prevent his attorney's fees and costs from exceeding $75,000.

Antimo further argues that attorney's fees are not recoverable because Reich has no contractual or statutory basis for collecting attorney's fees even if his counterclaim is successful. Reich argues that attorney's fees from defending this action are actual damages for breach of the covenant not to sue.

Attorney's fees are typically not recoverable without statutory authorization or contractual

terms that allow it. See Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). The parties agree that the settlement agreement does not have an attorney's fees term or other statutory authorization for recovery. In some circumstances, however, a claimant may recover attorney's fees as actual damages. See Anchor Motor Freight, Inc. v. International Bhd. of Teamsters 700 F.2d 1067, 1072 (6th Cir.1983).

This Court has allowed such damages in a similar case, Paper, Allied, Chem. & Energy Workers Int'l Union, Loc. 5-508, AFL--CIO v. Slurry Explosive Corp., 107 F. Supp. 2d 1311, 1331 (D. Kan. 2000).[3] There, to avoid the cost of litigation over an union member's discharge, plaintiff and defendant agreed that plaintiff would not assert a claim that the discharge constituted a "layoff." Plaintiff later sought to compel arbitration of the discharge issue, which defendant claimed was necessarily an assertion that the union member had been laid off. This Court allowed defendant to pursue attorney's fees as actual damages for plaintiff's alleged breach of contract. Id. Antimo does not distinguish Paper, instead stating that Reich "has not provided support for extending this prior ruling to the instant case." Antimo, LLC's Reply Brief In Support Of Its Motion To Strike Or Dismiss (Doc. #45) filed November 3, 2025. Paper is directly applicable however, and well-reasoned. Reich has therefore alleged damages that meet the amount in controversy requirement for diversity jurisdiction.

## II.     12(b)(6)–Failure To State A Claim

As noted, Reich asserts a counterclaim which alleges that Antimo materially breached the covenant not to sue in Section 6 by bringing this action. Antimo seeks to dismiss this counterclaim because Section 5 of the settlement agreement does not release claims for "fraud, gross negligence,

---

[3] In his proposed surreply, Reich argues for the first time that Texas law governs the settlement agreement. The record contains no facts that support this conclusion. The Court analyzes the contract claim under Kansas law.

or willful misconduct," so its claims for fraud and willful misconduct do not breach the settlement agreement.

The elements of a breach of contract claim are as follows: (1) the existence of a contract between the parties; (2) consideration; (3) defendant's performance or willingness to perform in compliance with the contract; (4) plaintiff's breach of the contract; and (5) damage on account of the breach. Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc., 265 F.Supp.2d 1179, 1187 (D. Kan. 2003). At this stage in the litigation, Reich must allege sufficient facts to show a plausible claim for breach of contract. The parties appear to agree that plaintiff has satisfied all elements except whether this suit is a breach of the settlement agreement.

The agreement has Section 5 ("Release of Atlas and Reich") and Section 6 ("Covenant Not To Sue"). Section 5 reads: "[Antimo] releases, forever discharges and covenants not to sue Reich . . . from any and all claims . . . , and notwithstanding anything to the contrary herein, **Antimo shall not release Reich for any act** or non-action where such act, omission or error in judgment, occurring from the July 6, 2020 through the date of this Agreement, **constitutes, fraud**, gross negligence, or **willful misconduct**." (emphasis added). Section 6 reads: "**Upon ATLAS'S satisfaction of its obligations under this Agreement,** [Antimo] **hereby covenants not to sue and fully releases**, acquits, and discharges Atlas and Reich with respect to and from any and all claims . . . arising under or in connection with Reich's employment and termination of employment." (emphasis added).

As noted, Reich brings suit under Section 6, which does not reserve plaintiff's rights to sue for fraud claims. See Defendant Brendan Reich's Answer To Plaintiff's Second Amended Complaint, Affirmative Defenses, and Counterclaim (Doc. #34) filed September 8, 2025 at ¶ 8, 17–18. The parties' arguments center on the relationship between Section 5 and Section 6. This

issue is immaterial, however, because Reich's claim is under Section 6,[4] which begins with a condition precedent, "Upon Atlas's satisfaction of its obligations under this Agreement . . . ."  See Defendant Brendan Reich's Opposition To Plaintiff's Motion To Dismiss Counterclaim And Motion To Strike Affirmative Defenses (Doc. #44) filed October 20, 2025.  Under Section 6, Antimo's covenant not to sue is predicated on satisfaction by Atlas of its obligations under the settlement agreement.  Reich does not allege any facts which show Atlas has satisfied its obligations under the settlement agreement, or even what those obligations are.

Reich bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief, but he has not alleged that the Section 6 condition precedent has been satisfied.  Because Reich's counterclaim relies solely on Section 6, the Court cannot reasonably infer that defendant is liable for the alleged breach.  See Iqbal, 556 U.S. at 678.  In short, Reich has not alleged sufficient facts to plausibly state a claim on which relief can be sought.  See Twombly, 550 U.S. at 556.

Reich alleges that the agreement is "valid and enforceable," see Answer To Plaintiff's Second Amended Complaint, Affirmative Defenses, And Counterclaim (Doc. #34) at ¶ 15, but a threadbare legal conclusion does not state a plausible claim.  Id.  Moreover, a valid and enforceable agreement can contain obligations which are not in effect due to an unsatisfied condition precedent.  See e.g., Stephenson v. Young, No. CIV.A. 10-2197-KHV, 2011 WL 2112021, at *3 (D. Kan. May 26, 2011).

Because Reich has not stated a claim on which relief can be sought, Antimo's motion to

---

[4] Reich does not allege a claim for breach of the Section 5 covenant not to sue.  See Defendant Brendan Reich's Answer To Plaintiff's Second Amended Complaint, Affirmative Defenses, And Counterclaim (Doc. #34) filed September 8, 2025.  Indeed, such a claim would face dismissal given the fraud carve-out provision in Section 5.

dismiss the counterclaim is sustained.

### III.     12(f)–Insufficient And Immaterial

Under Rule 12(f), Antimo asks the Court to strike Reich's affirmative defenses No. 3 and No. 4, which argue that the settlement agreement bars Antimo's claims. Affirmative defense No. 3 reads: "Plaintiff's claims are barred, in whole or in part, by a valid enforceable Settlement Agreement and Release executed on October 2, 2024." Reich's affirmative defense No. 4 reads: "Plaintiff's claims are barred, in whole or in part, by a covenant not to sue contained in the Settlement and Release executed on October 2, 2024."

Reich's affirmative defenses No. 3 and No. 4 are legally insufficient because they do not allege that Atlas satisfied its obligations under Section 6 of the settlement agreement. The affirmative defenses allege no reason why the covenant not to sue in Section 5 would bar any of plaintiff's claims, and do not even allege that Section 5 contains a covenant not to sue. As with Section 6, Reich therefore fails to plead a valid defense, even by notice pleading standards. Antimo's motion to strike is therefore sustained under Rule 12(f).

### IV.     Reich's Motion For Leave To File Surreply

Reich seeks leave to file a surreply in opposition to Antimo's motion to dismiss, because Antimo raised new arguments in its reply. Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response and a reply. Surreplies typically are not allowed. Taylor v. Sebelius, 350 F.Supp.2d 888, 900 (D. Kan. 2004). They are permitted in rare cases only, and not without leave of court. Id. Here, Reich followed D. Kan. Local Rules in seeking leave to file his surreply and sufficiently argued that Antimo raised new arguments in its reply. Therefore, the Court sustains Reich's motion for leave to file his surreply.

**IT IS THEREFORE ORDERED** that Plaintiff/Counterclaim Defendant Antimo, LLC's

-15-

Motion To Strike Or Dismiss Defendant Reich's Counterclaim For Breach Of Contract (Doc. #42) filed September 29, 2025 is **SUSTAINED.**

**IT IS FURTHER ORDERED** that Defendant Brendan Reich's Motion For Leave To File Surreply In Further Opposition To Plaintiff's Motion To Strike Or Dismiss Counterclaim (Doc. #46) filed November 7, 2025 is **SUSTAINED.**

Dated this 12th day of December, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge